**Earl Barrington BURGESS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–89–00490–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 31, 1990.

Tom Donald Moran, Houston, for appellant.

Calvin A. Hartman, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

The court convicted appellant of felony forgery by possession and assessed punishment, enhanced by two prior convictions, at forty years imprisonment. Appellant brings seven points of error alleging: (1) insufficient evidence to support the conviction; (2) appellant did not knowingly and intelligently waive his right to counsel; (3) appellant did not knowingly and intelligently invoke his right of self-representation; (4) the court failed to properly admonish appellant of the dangers of self-representation; (5) appellant's waiver of right to counsel failed to comply with TEX.CODE CRIM. PROC.ANN. art. 1.051; (6) and (7) appellant's waiver of jury was without representation of counsel required by statute. We affirm.

The teller from the branch of a Houston bank testified that on December 30, 1988, she paid appellant $900 when he presented a savings withdrawal slip to her at the bank's counter. She testified further that appellant appeared again at the bank in early January 1989, and again presented a withdrawal slip on the same savings account. On that second occasion the teller told appellant the account had insufficient funds to satisfy his $400 requested withdrawal and she referred him to the customer service department of the bank. Customer service personnel learned the account had experienced previous forgery activity. The branch manager was told that appellant was present in the bank to make a withdrawal. The manager personally knew by sight the real person against whose account the withdrawal was requested. Appellant was not that person. The manager invited appellant into an anteroom. After a conversation with appellant the manager excused himself and called Houston Police. The manager showed police the temporary Department of Public Safety identification card presented by appellant when he made his requested withdrawal that day from the account of the depositor known to the manager. The manager told police that on a prior occasion appellant had made an unauthorized withdrawal from the account of the true depositor. Two bank tellers confirmed to police that appellant had made two such withdrawals from the account in question. Police arrested appellant and found in his wallet a temporary Department of Public Safety identification card with his correct name on it. No actual withdrawal slips were shown to police prior to the arrest. The withdrawal slip tendered by appellant on the day of the arrest was never found. It had been handed back to appellant prior to police intervention. The true depositor, Mullen, testified at trial he had never authorized appellant to take money from his savings account.

Excluding enhancement paragraphs, the January 6, 1989, indictment of appellant for felony forgery reads as follows:

... on or about December 30, 1988, did then and there unlawfully and with intent to defraud and harm, forge the writing duplicated below which purported to be the act of another who did not authorize that act by possessing it with intent to utter it and while knowing it was forged:

*Spread on the indictment is the following document stamped "Paid" by NBC Bank Houston, Heights Branch,*

*under date of December 30, 1988, and bearing the legend*    "CHARGE TO MY SAVINGS ACCOUNT":

The record shows appellant was represented at trial pro se after having had two court-appointed lawyers. The first lawyer asked to be excused due to appellant's refusal to cooperate with him. The second appointed counsel was excused at appellant's request just before jury voir dire, but was appointed as standby counsel, nonetheless. Appellant waived jury trial in writing, followed by oral inquiry by the court of appellant's knowledge of his constitutional right to a jury. Appellant entered a plea of not guilty and trial to the bench ensued.

In his first point of error appellant claims the State did not prove that any forgery had been committed by him. The rationale for appellant's argument is a carefully-woven fabric which begins with the definition of *felony forgery* under TEX. PENAL CODE ANN. § 32.21(d), and interprets the phrasing of that Penal Code section according to the technical meaning of words found in TEX.BUS. & COM.CODE ANN. § 3.102 *et seq.* (part of the Texas Uniform Commercial Code, or "UCC"). Appellant applies definitions found in the UCC because TEX.GOV'T.CODE ANN. § 311.011(b) directs words to be construed according to their technical meanings if such meanings are available. Appellant employs TEX.

GOV'T.CODE ANN. § 311.011 because the language in TEX.PENAL CODE ANN. § 1.05(b) related to construction rules for that code mandates such use "unless a different construction is required by the context".[1]

More directly stated, appellant argues that a savings account withdrawal slip cannot be the basis for a felony forgery conviction in Texas. We do not agree.

Appellant correctly argues that for the forgery of a savings account withdrawal slip to constitute a felony (rather than a misdemeanor) the document must be classified among those in TEX.PENAL CODE ANN. § 32.21(d), or § 32.21(e). Because subsection (e) is limited to "an *issue* of money, securities, postage,", etc., only subsection (d) remains as a possible basis for a felony offense:

> An offense under this section is a felony of the third degree if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check or similar sight order for payment of money, contract, release, or other commercial instrument.

TEX.PENAL CODE ANN. § 32.21(d).

Unfortunately, the Penal Code does not provide a definition for any of the "writings" it refers to in Section 32.21(d).

---

1. Appellant overlooks TEX.PENAL CODE ANN. § 1.05(a) which also says "The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code." (Objectives of the Penal Code are found in § 1.02.)

Appellant argues that the forged withdrawal slip is not a "check, or similar sight order for payment of money," because it fails to meet the definition of a "check" under the UCC as set out in TEX.BUS. & COM.CODE ANN. § 3.104. It is not a negotiable instrument payable on demand.

We notice the UCC does not define the terms "similar sight order", or "other commercial paper", found in section 32.21(d) of the Penal Code. The savings withdrawal slip possibly could fit into those categories. In any event, the UCC definition of "order" is broad enough to include the document in question here:

> An "order" is a direction to pay and must be more than an authorization or request. · It must identify the person to pay with reasonable certainty....

TEX.BUS. & COM.CODE ANN. § 3.102(a)(2).

The writing in this case is a pre-printed form provided by the bank to the depositor for use in withdrawing funds from his or her account. The form directs the bank to charge the depositor's account for the amount of funds desired to be drawn. The depositor directs the bank to pay him by his affirmative acts of writing the amount of money he wants, entering the date, designating the account number to be charged, signing his name, and presenting the slip to the bank teller for execution. At the point of presentation to the teller, the depositor cannot be said to be in an authorizing or requesting mode. He is directing the bank to give him money he has on deposit.

While the issue of this point of error appears to be one of first impression in Texas, it has been encountered in at least one other jurisdiction. In *State v. Young*, 24 Ohio Misc. 241, 260 N.E.2d 133 (1970), the trial court determined:

> The crime of forgery has been extended by statute and by judicial construction. It appears to cover nearly every class of instruments known to the law as affecting private or public rights. It further appears that the substance of the instrument as distinguished from its form is determinative of whether it may support a charge of forgery. (Citations omitted.)

In *State v. Young*, the court further found that the withdrawal slip had the "characteristics of an order, a request or a receipt for the payment of money", and that "Such an instrument, however, although non-negotiable, conforms to the definition of 'order' as set forth in [the UCC]. It is more than a request or a receipt. It is a direction to the bank to give the possessor of such an order money from a designated account."

We hold the withdrawal slip is an "order" within the definition of the UCC and that it is a writing included in TEX.PENAL CODE ANN. § 32.21(d).

The Texas Court of Criminal Appeals has established the elements of possession of a forged writing:

> The elements of forgery by possession with intent to utter are
> (1) a person
> (2) "forges"
> (3) a writing
> (4) with intent to defraud or harm
> (5) another.

In "possession" cases the term "forge" in § 32.21 means "(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B) of this subsection."

> *While evidence of a passing or attempted passing of a forged instrument would certainly aid a State's case of possessing a forged instrument, such evidence is not absolutely essential.*

*Burks v. State*, 693 S.W.2d 932, 936 (Tex. Crim.App.1985). (Emphasis added.)

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense of forgery by possession. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989) (reconfirming the *Jackson* standard of review). Appellant passed the withdrawal slip dated December 30, 1988, to the bank teller in exchange for $900. The owner of the savings account did not authorize him to do so. Appellant, being in possession of

the withdrawal slip, could have been found to have the requisite intent to utter it. The court below correctly determined that a savings account withdrawal slip is a writing within the definition of TEX.PENAL CODE ANN. § 32.21(d). Appellant's first point of error is overruled.

In points of error numbers two, three, four and five, appellant argues that the record is inadequate to show appellant knowingly and intentionally waived his right to counsel or invoked his right to self-representation, and that the waiver is not in writing as required by TEX.CODE CRIM.PROC.ANN. art. 1.051(g).

Appellant challenges the adequacy of the warnings given by the trial court as to the dangers, disadvantages and possible consequences of proceeding pro se. Appellant cites *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Williams v. State,* 691 S.W.2d 81 (Tex.App. —Houston [1st Dist.] 1985, no writ); *Johnson v. State,* 760 S.W.2d 277 (Tex.Crim. App.1988); *United States v. Tompkins,* 623 F.2d 824 (2nd Cir.1980); *Blankenship v. State,* 673 S.W.2d 578 (Tex.Crim.App. 1984); *Geeslin v. State,* 600 S.W.2d 309 (Tex.Crim.App.1980); and 2 LaFave & Israel, *Criminal Procedure,* § 11.5(c) (1984).

The statement of facts contains more than a seven page colloquy between the court and appellant constituting a hearing "so that you will be aware of the dangers and disadvantages of representing yourself . . ."

The record shows appellant filed a written motion to proceed pro se over a month before trial, indicating he gave the matter more than mere passing thought. Appellant was forty-one years old, a college graduate and a registered journalist. He said he felt he was "within normal limits of sanity." Appellant represented himself to his own satisfaction in a previous criminal trial (in which he said he received a life sentence as a habitual criminal). He understood the punishment range for the present offense was between twenty-five years and

life imprisonment. The trial judge advised him of the limited role his standby counsel would have. Appellant understood he would be held to the same courtroom standards as a licensed attorney. Appellant answered affirmatively when asked if he understood that he would be ". . . one hundred percent on your own if I allow you to represent yourself—no ifs and buts about it?"[2] He also answered affirmatively when asked the final question, "All right, you are willing to waive your right to counsel in open court in writing?"

Appellant filed a signed motion to proceed pro se, had an adequate hearing with proper admonishment, and he stated he was willing to waive his right to counsel upon invoking his rights to self representation. The record shows appellant wanted to represent himself in a bench trial and that he had been made aware of the dangers and disadvantages of self representation. The record establishes that appellant knew what he was doing and made his choice "with eyes open". *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). The choice need not have been a wise one. *Scarbrough v. State,* 777 S.W.2d 83, 92 (Tex.Crim.App. 1989). Had the trial court denied appellant the right to represent himself, given a similar trial outcome, appellant undoubtedly would be here on appeal claiming a denial of his Sixth Amendment rights under *Faretta.*

Appellant cites no authority to show failure to have a written waiver of right to counsel is reversible error. Under the circumstances, we view the signed motion to proceed pro se as being in substantial compliance with the intent of TEX.CODE CRIM. PROC.ANN. art. 1.051(g). However, if there was error in not having a waiver prepared to more substantially conform with the exact printed text of TEX.CODE CRIM.PROC. ANN. art. 1.051(g), it was harmless beyond reasonable doubt. Appellant's points of error numbers three, four and five are overruled.

**2.** This is entirely consistent with the holding in *Scarbrough v. State,* 777 S.W.2d 83 (Tex.Crim. App.1989), ". . . as part of the admonishments of the dangers and disadvantages of self representation, and accused should be made aware that self representation is exactly that."

In his last two points of error appellant contends the court below did not comply with statutory requirements for the waiver of jury. TEX.CODE CRIM.PROC.ANN. art. 1.13 says that in the prosecution of a felony offense less than capital, a defendant may waive his right to a jury but "before a defendant who has no attorney can agree to waive the jury, the court must appoint an attorney to represent him." Appellant contends his waiver has no force and effect because he was not represented by counsel at the moment he waived jury trial. Appellant asserts that just prior to his waiver of jury, appointed counsel had been reduced to the status of a standby trial counsel. The State argues that appellant still was fully represented by court-appointed counsel at the moment of the jury waiver. In the alternative, the State argues standby counsel signed the waiver as a proper court-appointed counsel for the limited purpose of waiving a jury.

We find more than irony in the fact that the record contains a written waiver of jury form signed by appellant, the presiding judge, the prosecutor, *and* the court-appointed attorney for appellant. All parties signing must have had a meeting of the minds that the person signing as attorney for appellant was acting in that capacity. Further, the testimony shows that the election to forego a jury was announced in court by appellant's appointed attorney, and that appellant participated in the dialogue by ratifying the acts of his attorney-agent who was acting and speaking for him. The following exchange led to the signing of the jury waiver:

> COUNSEL: Excuse me, Your Honor. Mr. Burgess and I have been discussing something. If you will give us just a minute maybe we will be able to save a little time on it.
>
> THE COURT: All right.
>
> COUNSEL: Excuse me, Your Honor. Mr. Burgess and I have discussed the possibility of waiving a jury and having a trial to the Court, still with him representing himself.
>
> THE COURT: All right.

> COUNSEL: Is that correct, Mr. Burgess?
>
> APPELLANT: Yes, Your Honor.
>
> THE COURT: All right, if so, somebody get me a jury waiver.

We hold that appellant still had counsel representing him until trial started, and that the standby status of his counsel was not in force until trial began. When the jury waiver was signed, counsel was still representing appellant. The above testimony shows that to be true. The signed jury waiver acknowledges the intent of the parties to that effect. There is nothing in the record to establish that appellant's counsel was intended to be discharged by the court any earlier than when the actual trial commenced. The only words by the court on the subject of appellant's counsel being discharged (aside from the condition that he would become standby counsel) occurred at the pre-trial hearing immediately before the dialogue recited above. The court considered appellant's request to represent himself "in the case that we are about to try", and granted the waiver of counsel with only the words "All right". Further, because no objection to the proceeding was made before to the trial court, nothing was preserved for appellate review. Failure to object can even waive an error involving constitutional rights. *See Little v. State*, 758 S.W.2d 551, 564 (Tex.Crim.App.1988), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346. If there was error it was harmless beyond reasonable doubt. Appellant's points of error number six and seven are overruled.

Appellant has delivered to this court a pro se brief in which he seeks to raise two additional points of error. Appellant is represented by counsel on appeal, and appellant's counsel has filed a brief raising substantive points of error. In addition, counsel for appellant appeared on behalf of appellant to present oral argument before this court. There is no right to hybrid representation. Appellant's pro se brief presents nothing for review. *Rudd v. State*, 616 S.W.2d 623, 625 (Tex.Crim.App. 1981). We have examined the issues and contentions raised in appellant's pro se

brief and find no error that should be considered in the interest of justice.

The judgment of the trial court is affirmed.