**Oliver Curtis CUSTARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–89–00120–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 20, 1991.

Rehearing Overruled July 18, 1991.

Discretionary Review Refused
Oct. 2, 1991.

Travis E. Kitchens, Jr., Coldsprings, for appellant.

Joe L. Price, Trinity Co. Dist. Atty., for appellee.

Before SAM BASS, DUNN and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant guilty of murder and made an affirmative finding on use of a deadly weapon. The jury assessed punishment at life imprisonment and a $500 fine. We affirm.

Milton Hoot, 73, was killed on November 23, 1987, in a remote area of San Jacinto County, Texas, by a single shotgun blast to the chest.

Mr. Hoot's wife testified that a white male, later identified as Marron Douglas Ritchey, came by the house around 10:20 p.m. the evening of the 23rd. Ritchey had arrived at the house in a red pickup truck. There was someone else in the truck, but Mrs. Hoot could not see well enough to identify the person. Mr. Hoot told her he would be back soon, and left to help Ritchey with his vehicle. When her husband had not returned by 3:30 a.m., Mrs. Hoot notified the local constable, Ken Hammonds. Constable Hammonds questioned Ritchey, who admitted going to the Hoots' house on the night of the 23rd. Ritchey said that he needed help with his truck and got a ride to the Hoot residence from a stranger. Mr. Hoot had helped Ritchey with his vehicle, and Mr. Hoot had gone on his way.

Hoot's body was discovered on Thanksgiving Day, November 26, near one of his pastures on national forest land. Tire tracks indicated that two vehicles had driven into the area, passing through two fences. The lock on the gate of the first fence had been cut by a bolt cutter. The fence next to the second gate had been lowered and something had scraped the gate post, leaving red paint on it. Ritchey owned a red pickup truck with a scuff mark on the right front bumper at approximately the same height from the ground as the mark on the gate post. Hoot's truck was found abandoned on a road leading into the forest, and his body was located down another road, some distance away.

No identifiable fingerprints were recovered from Hoot's truck, Ritchey's truck, the lock, or the fence post. No other scientific tests were performed on the physical evidence. The shell that killed Hoot was fired from a shotgun that belonged to Ritchey's aunt. The shell casing found at the scene was an unusual type of shell, and several more were found at Ritchey's aunt's house. Before he was killed, Hoot wrote a back-dated check for $400.00 made payable to Ritchey; it was cashed the day after Hoot's disappearance.

On November 30, 1987, unrelated robbery charges were filed against Ritchey by a Mr. Steelhammer. On the day Hoot was last seen, Ritchey forced Steelhammer, at gun point, to write a $300 check to him. Following his arrest, Ritchey admitted his involvement in Hoot's death and implicated appellant, as an accomplice in the robbery, and as the actual murderer.

Appellant was questioned by the police and a grand jury during the investigation. He admitted seeing Ritchey on the day of Hoot's murder, but said he was not with him during the hours of the murder. When he became a suspect, appellant appeared a second time before the grand jury and said that he had been present at the shooting of Hoot, but played no part in the robbery or murder. Appellant said he had not come forward because Ritchey had threatened him and his family. He was also afraid he would be blamed because he was black, and the victim was white. Both men were indicted for murder and aggravated robbery.

Ritchey was sentenced to life confinement for murder, and twenty-five years confinement for aggravated robbery. He agreed to testify at appellant's trial in exchange for non-prosecution of the unrelated robbery charge. Ritchey testified he and appellant planned the robbery to get money to buy cocaine. He testified that appellant was the one who decided Hoot should be killed, and that appellant pulled the trigger.

Appellant requested a directed verdict after the State rested. The motion was granted as to the aggravated robbery charge, but not as to the murder charge. Appellant rested without putting on evidence. The jury was instructed on the law of parties and on accomplice testimony. After two hours' deliberation, the jury returned a guilty verdict.

Appellant brings 17 points of error.[1] In points of error one through three, appellant contends the evidence is insufficient to support the verdict finding him guilty of murder.

■ The standard of review for sufficiency of the evidence in criminal cases is whether, when viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The entire body of evidence is reviewed to determine whether the State has proven beyond a reasonable doubt each and every element of the alleged crime and not just a plausible explanation of the crime. *Butler v. State*, 769 S.W.2d 234, 239 (Tex. Crim.App.1989).

■ The State's complete case against appellant was based on the accomplice witness testimony of Ritchey and on appellant's statements to police and the grand jury. Appellant did not testify during the guilt-innocence phase. Because an accomplice is one who participated in the crime for which the defendant is being tried, accomplice testimony is deemed to be corrupt and looked upon with suspicion. *Virts v. State*, 739 S.W.2d 25, 27 (Tex.Crim.App. 1987). Article 38.14 of the Code of Criminal Procedure states:

---

1. We note that appellant, pro se, filed a "Supplemental Brief" asserting one additional point of error. Appellant is not entitled to hybrid representation on appeal, so we do not address the pro se 18th point of error. *Rudd v. State*, 616 S.W.2d 623, 625 (Tex.Crim.App.1981); *Burgess v. State*, 790 S.W.2d 856, 861–862 (Tex.App.— Houston [14th Dist.] 1990, no writ). An examination of the contentions asserted in appellant's pro se brief reveals no error that should be considered in the interest of justice.

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX.CODE CRIM.P.ANN. art. 38.14 (Vernon 1979).

■ This rule prevents the State from basing a prosecution solely upon the word of a confederate of the defendant, without some other independent evidence. The test to determine whether accomplice witness testimony has been sufficiently corroborated is to eliminate the accomplice witness testimony from consideration and examine the remaining evidence to ascertain whether it independently tends to connect the appellant to the commission of the offense. *Jackson v. State*, 745 S.W.2d 4, 11 (Tex. Crim.App.1988) (en banc); *Reed v. State*, 744 S.W.2d 112, 125 (Tex.Crim.App.1988) (en banc) (overruling cases indicating the standard is that the "accomplice witness testimony is more likely than not"). All the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary, and the corroborative evidence does not have to directly link the appellant to the offense or be sufficient by itself to establish guilt. *Id.* at 126; *Blackmon v. State*, 786 S.W.2d 467, 473 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). Evidence that is independent of accomplice witness testimony which tends to connect the appellant with the crime is sufficient to corroborate the testimony and sustain a conviction. *Paulus v. State*, 633 S.W.2d 827, 845 (Tex.Crim.App.1982).

■ After eliminating the testimony of the accomplice witness in this instance, the evidence that tends to connect appellant to the commission of the crime is as follows: (1) appellant's statements to police and the grand jury that he was present when Hoot was shot, that he drove one of the trucks to the murder site, and that one gate lock was cut by bolt cutters that belonged to Ritchey and were in the rear of the truck which appellant admitted driving; and (2) the fact appellant changed his testimony before the grand jury, at first saying he was not with Ritchey at the time of the murder, and then admitting he was present.

■ The presence of the accused with the accomplice witness at or near the scene of the crime or about the time of its commission, when coupled with other suspicious circumstances, may be sufficient to corroborate the testimony of the accomplice witness to support a conviction. *Reed v. State*, 744 S.W.2d at 127; *Paulus v. State*, 633 S.W.2d at 846. In determining the sufficiency of the corroboration, the evidence is viewed in the light most favorable to the verdict. *Blackmon v. State*, 786 S.W.2d at 474.

We find the corroborative evidence tended to connect appellant with the murder. Therefore, we find the evidence was sufficient to support the verdict finding appellant guilty of murder. We overrule points of error one, two and three.

■ In point of error four, appellant complains there was insufficient evidence to support the finding that appellant himself exhibited a deadly weapon. In accordance with *Travelstead v. State*, 693 S.W.2d 400, 402 (Tex.Crim.App.1985), a jury question was submitted to the jury at the punishment stage asking whether appellant used or exhibited a deadly weapon. The jury answered the question in the affirmative. We hold that the evidence summarized under the prior points of error supports the finding. We overrule appellant's point of error four.

■ In points of error five through seven, appellant contends that the trial court erred in: denying his motion for continuance of the jury selection that was taking place on January 16, 1989, Martin Luther King Day; denying his motion to attach jurors he claimed were improperly excused; and denying his motion to quash the jury panel.

On January 16, 1989, before the venire was seated and voir dired, appellant made

oral motions for continuance, for earlier excused jurors to be attached, and to quash the jury panel. The motions were dictated into the record and appear in the statement of facts. The trial court denied the motions after a hearing was held.

The stated grounds for appellant's motion to attach, motion to quash and motion for continuance, were as follows:

[BY DEFENSE COUNSEL]:

Your Honor, comes now the defense and requests that the court attach certain jurors, which we will enumerate for the purposes of explaining and providing a record for the defense.

It has come to the attention of the defense this morning that certain individuals have been excused summarily, I am assuming over the phone, and we would like some testimony in that regard from the named individuals who were excused. For some reason, for not providing the affidavit, in order to preserve our record, we would like either the testimony or affidavit. We further move that the court attach, on our request, certain parties who are absent, summonsed jurors who have submitted and been granted an excuse for reasons other than the statutory reasons set forth in the affidavit.

We ask that the court attach and bring those people forward.

Also we are requesting that this panel be scrubbed and this cause be resumed on another date.

Your Honor, it has come to the attention of the defense only now that the post office is closed this day. In other words, there has been an observance of some consequence of the Martin Luther King holiday. It is observed in other counties throughout the state, courthouses are closed, banks and so forth are closed. Since we do have a sensitive issue here, Your Honor, we do have a black defendant, we do have a white deceased, it is an inflammatory situation in any event, and as a matter-of-fact, we have even gotten a change of venue with that in mind.

I would like the court to postpone this proceeding to another day to show respect for Martin Luther King, and also to give the defendant every opportunity to meet and select a jury who will be here freely, voluntarily and willing to give it their best effort for deliberation and not feel imposed upon by this court who exercised jury duty and their obligation on a holiday.

It is a holiday, probably, Your Honor, peculiar to a particular race, and I urge that the court continue this matter.

As a general rule, a motion for continuance must be a sworn written motion. TEX. CODE CRIM.P.ANN. art. 29.03 (Vernon 1989); *Flores v. State*, 789 S.W.2d 694, 698 (Tex. App.—Houston [1st Dist.] 1990, no pet.). However, exceptions to this general rule have been acknowledged. *O'Rarden v. State*, 777 S.W.2d 455, 459 (Tex.App.—Dallas 1989, pet. ref'd). The failure to grant a motion for continuance is not error unless there is a showing of an abuse of discretion. *Garcia v. State*, 581 S.W.2d 168, 176 (Tex.Crim.App.—1979); *Hernandez v. State*, 492 S.W.2d 466, 467 (Tex.Crim.App. 1973).

■ Provision for the attachment of absent venirepersons is found in TEX.CODE CRIM.P.ANN. art. 35.01 (Vernon 1989). The pertinent language is:

An attachment may issue on request of either party for any absent summoned juror, to have him brought forthwith before the court.

This statute is directory, not mandatory, and any failure of the court to observe a literal compliance will not constitute reversible error absent a showing of injury due to the court's failure to grant the request. *Jackson v. State*, 745 S.W.2d 4, 17 (Tex. Crim.App.1988); *Hernandez v. State*, 643 S.W.2d 397, 400 (Tex.Crim.App.1983).

The trial court heard testimony from the Trinity County district clerk, deputy clerk, and the judges' secretary, regarding the venire selection process to that point. The district clerk, Joreen Legg, was asked by the trial court:

Has there been any juror asked to be excused because this was the Martin Luther King holiday, and have they filed an affidavit to that effect?

She testified she had received none and had no knowledge of any affidavits or requests from venirepersons asking to be excused due to the Martin Luther King "holiday" (which was an optional state holiday at the time [2]). Appellant's counsel was asked by the trial court if they were aware of any, and they stated they were not aware of any such requests. The trial court then denied the motion for continuance. We find no abuse of discretion in this ruling.

The hearing on the motion to quash the venire resumed. Out of 148 prospective jurors summoned, 46 had been excused by the district clerk, the deputy district clerk, or the judge's secretary; 39 did not respond to the summons; and another six were excused by the judge. This left 57 qualified venirepersons for selection, 12 of whom were black.

The district clerk and the judge's secretary testified they had been designated by the judge to have the authority to excuse jurors.[3] The district clerk testified she further delegated the authority to her deputy clerk. Each one testified concerning the reasons given by the jurors they excused. Some reasons given for excusing the jurors were normal exemptions (i.e. over 65, college student, custody of children under 10 years old, etc.), or the individuals had vacation plans scheduled. Some were known to have moved out of the county, and some relatives called to say the person was in the armed forces. Most were excused over the telephone and were told to mail in their exemption cards. They testified that many

of the exemption cards were probably in the Post Office and not delivered yet due to the holiday. The record does not show how many of the summoned venirepersons were black, or how many of those excused or who were absent for other reasons, were black. The trial court stated, during a recess in the hearing on appellant's motions and after the venire had been brought into the court room, but before it had been qualified:

THE COURT: ... I came in here because I wanted to see what the make-up of this panel looks like.... Now, we have several blacks on the panel, and that is one reason I wanted to come in here and see what it looked like.

Appellant claims that due to "irregularities" in the process of granting exemptions or excuses from jury duty, he was compelled to participate in a jury selection process that forced him to choose a jury of his peers from a panel of only 57 persons, with a small percentage of blacks on the panel.

■ In order for the unauthorized excusing of jurors to warrant reversal, the defendant must show that he was harmed or that his right to trial by impartial jury was impaired. *Neal v. State*, 689 S.W.2d 420, 424 (Tex.Crim.App.1984) (district clerk excused 37 persons from the venire because they "called in or something"; no reversible error).[4] Appellant has made no showing that he was forced to take an objectionable juror, or that his right to trial by an impartial jury was impaired by the jury selection process.

We find an abuse of discretion has not been shown in the trial court's overruling of appellant's motion to attach and motion to quash. We overrule points of error five, six, and seven.

---

**2.** Tex.Civ.Stat.Ann. art. 4591.4 (Vernon Supp. 1991), as enacted in 1987.

**3.** Tex.Gov't Code Ann. § 62.110(b) (Vernon 1988), as enacted in 1985, and Tex.Code Crim.P.Ann. art. 35.03 (Vernon 1989), as amended in 1987, allows a designee of the court to hear any reasonable excuse of a prospective juror and discharge the juror or release him from jury service until a specified day of the term.

**4.** The Court found no reversible error even though, at the time *Neal* was heard, only the trial court had the authority to hear juror excuses and to grant them. The authority to delegate the task did not arise until 1985. *See supra, note 3.*

The discussion of the remaining points of error does not meet the criteria for publication, Tex.R.App.P. 90, and is thus ordered not published. The judgment is affirmed.