Affirmed and Memorandum Opinion filed December 15, 2005









Affirmed and Memorandum Opinion filed December 15, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00769-CR

____________

 

JACK
JOSEPH HAMMETT, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

__________________________________________________________________

 

On Appeal from the 405th District Court

Galveston County, Texas

Trial Court Cause No. 02CR0620

__________________________________________________________________

 

M E M O R A N D U M   O P I N I O N

A jury found appellant Jack
Joseph Hammett guilty of manslaughter. 
Challenging his conviction, appellant brings eight issues alleging
various errors during the voir dire process and the guilt/innocence phase of
trial.  We affirm. 

I.  Factual
and Procedural Background








On December 5, 2001, Adam Roque (ARoque@) was
driving a company delivery truck when he experienced a tire blowout.  The blowout occurred while he was driving
south on the inside lane of Interstate 45, near Highway 518 in League City,
Texas.  The disabled vehicle required a
special wrecker due to its size and weight. 
Roque did not carry a mobile phone with him and was forced to leave his
vehicle unattended while he went to seek assistance.  Roque ran across the highway to a nearby
place of business to call his employer. 

Roque=s
employer directed him to stay with the disabled vehicle and wait for the
wrecker to arrive.  While Roque waited
for the wrecker to arrive, he fell asleep in the vehicle. About two hours
later, Jesse Hernandez, the wrecker manager, arrived to provide
assistance.  Hernandez also parked his
vehicle on the inside shoulder of the highway. 
While Hernandez and Roque conversed on the inside shoulder of the
highway, a silver Lincoln Continental driven by appellant, Jack Joseph Hammett,
struck both Hernandez=s and
Roque=s
vehicles and a violent collision occurred. 

Roque was thrown several feet
into the passing lane of the highway. 
However, Roque was able to stand up after being thrown and saw Hernandez
lying in the road.  Shortly thereafter,
the police and emergency technicians arrived. 
Appellant was extricated from the Lincoln with the Ajaws of
life.@  Both appellant and Roque were life-flighted
to the hospital, while Hernandez was pronounced dead at the scene. 

After being charged with the
offense of manslaughter, appellant pleaded not guilty. A jury found him guilty
and after a separate punishment hearing, the trial court sentenced him to
twenty years= confinement.  Appellant filed a pro se  application for writ of habeas corpus
seeking relief to file an out-of-time appeal. 
This application for habeas relief was granted.  Appellant filed a motion for new trial which
was overruled by operation of law. Appellant now brings this appeal.  

II.  Issues Presented

Appellant asserts the following
issues on appeal: 








(1)       Did the trial court abuse its discretion by allowing voir dire
questioning to continue even though there were two missing panel members and
appellant had requested attachment of these missing members under articles
35.01 and 37.07 of the Texas Code of Criminal Procedure? 

(2)       Did the trial court err by allowing the prosecutor to state
law contrary to the indictment and inject new facts during voir dire, trial,
and final argument?

(3)       Did the trial court err by allowing the prosecutor to claim he
represented the Avictim@ and the Avictim=s@ family? 

(4)       Did the trial court err by allowing the jury to be influenced
by alleged emotional outbursts of the victim=s family members? 

(5)       Did the trial court err by allowing the prosecutor to argue
facts allegedly outside the record? 

(6)       Did the trial court err by allowing alleged sidebar comments
from the prosecutor? 

(7)       Did the trial court err by allowing a
police officer to testify regarding his opinion as to whether appellant
committed manslaughter? 

(8)       Does the cumulative effect of all of the errors stated in
issues one through seven constitute reversible error? 

 

As explained more fully below,
appellant waived several of his complaints and the remaining issues lack merit.

III.  Analysis

A.        Did the trial court abuse its discretion
by failing to quash the jury panel or issue a writ of attachment under articles
35.01 and 37.07 of the Texas Code of Criminal Procedure for two jurors who
failed to appear for voir dire? 








In his
first issue, appellant contends that the trial court erred by failing to quash
the jury panel or issue a writ of attachment under section 35.01 of the Texas
Code of Criminal Procedure, for two jurors who failed to appeal for voir dire.  The trial court found that the voir dire
process would not be held up by these two jurors, overruled appellant=s motion
to quash the panel, or alternatively attach the prospective jurors. We conclude
that the trial court did not abuse its discretion. 

Article
35.01 provides: 

When a case is called for
trial and the parties have announced ready for trial, the names of those
summoned as jurors in the case shall be called. Those not present may be fined
not exceeding fifty dollars. An attachment may issue on request of either party
for any absent summoned juror, to have him brought forthwith before the court.
A person who is summoned but not present, may upon an appearance, before the
jury is qualified, be tried as to his qualifications and impaneled as a juror
unless challenged, but no cause shall be unreasonably delayed on account of his
absence.

 

Tex.
Code Crim. Proc. Ann. art. 35.01 (Vernon Supp. 2005).  Whether the trial court errs by failing to
quash the jury panel or attach the absent jurors is reviewed under an
abuse-of-discretion standard.  See
Porter v. State, 623 S.W.2d 374, 377 (Tex. Crim. App. 1981) (holding
that the trial court did not abuse its discretion in failing to attach the
jurors under article 35.07 because the evidence presented failed to show that a
person unauthorized by law excused the prospective jurors or that a person Awilfully
summoned jurors with a view to securing a conviction or an acquittal@);
Mendoza v. State, 552 S.W.2d 444, 447 (Tex. Crim. App. 1977) (stating that
review of motion to quash jury panel is under an abuse of discretion standard);Dent
v. State, 504 S.W.2d 455, 456 (Tex. Crim. App. 1974) (holding that trial
court did not abuse its discretion in failing to hold a hearing on defendant=s motion
to quash jury panel or writ of attachment as statute is directory, not
mandatory.)  Article 35.01, which
provides for the attachment of absent jurors, is directory and not
mandatory.  See Moreno v. State,
587 S.W.2d 405, 407 (Tex. Crim. App. 1979); Dent, 504 S.W.2d at
456.  








Appellant
must show both that he requested the attachment and that he was injured
by the trial court=s failure
to issue the attachment.  See Dent,
504 S.W.2d at 457 (holding that because no injury was shown there was no
reversible error); see also Jackson v. State, 745 S.W.2d 4, 17
(Tex. Crim. App. 1988) (holding that for the denial of an attachment to
constitute reversible error, the defendant must establish that an injury
occurred due to the trial court=s failure
to grant his request for the attachments). 


Appellant
failed to satisfy this burden of proof. 
Appellant was required to show that the denial of the attachment forced
him to accept an objectionable juror on the jury.  Here, the record does not show any identified
juror whom appellant claimed was objectionable. 
See  Jones v. State,
119 S.W.3d 766, 785 (Tex. Crim. App. 2003) (concluding that defendant
failed to establish that he was forced to take an objectionable juror as a
result of trial court=s denial
of application for writs of attachment requiring appearance of prospective
jurors, and thus denial of application did not constitute reversible error; and
defendant did not at trial, or on appeal, point to any evidence to support his
allegations that prospective jurors were challengeable for cause); Stephenson
v. State, 494 S.W.2d 900, 906 (Tex. Crim. App. 1973) (holding that an Aobjectionable
juror,@ for purposes
of showing injury where defendant is allegedly forced to take an objectionable
juror upon refusal of trial court to issue attachments for absent summoned
jurors, means one against whom such cause for challenge exists as would likely
affect his competency or his impartiality at the trial).








At the
end of voir dire, appellant did not make any further objection regarding the
missing jurors nor did he identify any objectionable jurors, or even object to
the seating of the jury.  Thus, the record
does not show injury to appellant resulting from the trial court=s rulings
in this regard.  See Hernandez v.
State, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982) (holding that
record showed no injury to appellant resulting from the trial court=s
overruling of his motion to attach absent venireman);  Custard v. State, 812 S.W.2d 82, 87
(Tex. App.CHouston [1st Dist.] 1991, pet.
ref=d)
(holding that trial court=s denial
of motion to attach did not constitute reversible error because the record did
not show harm based on the trial court=s failure
to grant the motion).  We conclude that
the trial court did not reversibly err by failing to grant appellant=s motion
to quash the jury panel or issue a writ of attachment under section 35.01 of
the Texas Code of Criminal Procedure, for the two jurors who failed to appeal
for voir dire.  Jackson, 745
S.W.2d at 17 (holding that trial court did not abuse its discretion by failing
to grant the motion to quash or motion to attach because [appellant] failed to
demonstrate harm by showing that he was forced to accept an objectionable
juror.)  Accordingly, we overrule
appellant=s first issue. 

B.    Did the trial court err by
allowing the prosecutor to state law contrary to the indictment and inject new
facts during voir dire, trial, and final argument?

 

In his
second issue, appellant argues that the trial court erred by allowing the
prosecutor to state law contrary to the indictment and inject new facts during
voir dire, trial, and final argument. 
More specifically, appellant states that the following comments made by
the State were improper and harmful: 

(1)       During voir dire, the prosecutor was
explaining the difference between murder and manslaughter.  The State stated, ANot that they didn=t have to have the intent
to do anything.  It=s just that their behavior
was such that ordinary, standard, and prudent people would have deemed it
reckless.@

(2)       During voir dire, the State stated, AThe behavior of the
individual was unreasonable prior to the time of this event even, though theBit was not something they
intended to do, they can=t then come before you,
can they, Mr. Johnson, and say it was an accident.@

(3)       During voir dire, the State stated, AEven though I didn=t mean to cause the
collision, I mean, that was not my intention, I didn=t mean to cause the
collision, I didn=t mean that to happen . .
. Some substantial unjustifiable risk.@ 

(4)       During voir dire, the State, when discussing what the ordinary
standard of care means, stated, AWe look at what other
people are doing, and, hey, that seems to be pretty ordinary . . .  That seems to be a deviation from the
standard of care that ordinary people take, right?@ 








(5)       During voir dire, in discussing the deviation from the
ordinary standard of care versus a gross deviation from the ordinary standard
of care, the State stated, ANow, running through every red light in Galveston
on Broadway may be a grossCnot only is it a deviation, but some people may
think, look, not only did you deviate, but it was you grossly deviated from the
ordinary standard of care.@  

(6)       During its opening statement, the State stated, AYou=ll hear from six
eyewitnesses, citizens just like you and I, who will tell you that the behavior
they saw [appellant] engage in on December 5th of 2001, was a gross deviation
from the ordinary standard of care.@

 

With
certain exceptions not applicable here, to properly preserve an issue for
appellate review, appellant must have made a timely request, objection, or
motion, stating the specific grounds for the ruling he desired.  See Martinez v. State, 867 S.W.2d 30, 35
(Tex. Crim. App. 1993).  The objection
must be made at the earliest possible opportunity and the complaint on appeal
must correspond to the objection made at trial.  Turner v. State, 805 S.W.2d 423, 431
(Tex. Crim. App. 1991).  Appellant did
not object to any of the above statements that form the basis for his second
issue.  See Cockrell v. State, 933
S.W.2d 73, 89 (Tex. Crim. App. 1996) (holding that a defendant=s failure
to object to a jury argument forfeits his right to complain about the argument
on appeal); Penry v. State, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995)
(stating that to preserve an objection for prosecutorial misconduct one must
not only object but also request an instruction to disregard and move for a
mistrial); Longoria v. State, 154 S.W.3d 747, 765 (Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d)
(holding that defendant failed to preserve error as to comments made by the
State during closing argument by failing to object to these comments during
trial); Jenkins v. State, 870 S.W.2d 626, 629 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d)
(stating that by failing to object to the prosecutor=s voir
dire statements, appellant has presented nothing for review).  Because appellant has not preserved error, we
overrule his second issue. 

C.        Did the trial court err by allowing the
prosecutor to claim he represented the Avictim@ and the Avictim=s@ family? 

 








In his
third issue, appellant contends that the trial court erred by allowing the
prosecutor to make the following comment during voir dire: AI
represent a victim, a human being who has been victimized.@  The prosecutor further identified himself as
the victim=s and the victim=s family=s
lawyer.  The State contends that
appellant did not preserve error as to this issue.  We agree. 
Appellant did not make this objection at trial.  See Draughon v. State, 831
S.W.2d 331 (Tex. Crim. App. 1992) (holding that defendant waived his complaint
regarding the prosecutor=s comment
that he represented a private interest by failing to object at trial).  Because appellant failed to object at trial,
he failed to preserve error. 
Accordingly, we overrule his third issue.

D.        Did the trial court err by allowing the
jury to be influenced by alleged emotional outbursts of the victim=s family members? 

 

In his
fourth issue, appellant argues that the trial court erred by allowing the jury
to witness an emotional outburst by the decedent=s
sister.  The decedent=s sister
ran out of the courtroom allegedly visibly upset during the testimony of Dr.
Stephen Pustilnik, the forensic pathologist who performed the autopsy on the
decedent.  The State contends that
appellant did not preserve error as to this issue.  We agree. 


Appellant
made no timely objection at trial, and did not receive an adverse ruling.  The only objection made during Dr. Pustilnik=s
testimony in regard to this issue occurred during the following exchange: 








[Defense counsel]:    Judge, I have two requests. One would be
that I would like to invoke the Rule at this time.  I believe there are some witnesses who will
testify todayBtomorrow in the
courtroom.  Secondly, and again, I
certainly don=t want to be too callous
about this.  It=s a horrible case and it=s hard for the family to
see this, but those kinds of displays of emotion in the courtroom over a
protracted period of time are going to impact my client=s ability to get a fair
trial in front of this jury, and I ask that if they can=t somewhat control their
emotions, that they stay outside in the hallway.  I don=t know how we do that, but
I=m concerned coming back
in, leaving.  It emphasizes this case to
the jury in a way that I simply can=t respond to without
looking like a monster. 

Trial Court:                Okay. 

[Defense counsel]:    And I=m not saying the State
intended that. 

Trial Court:                Right.  Okay, [Name of Prosecutor], you know the
general instruction to go give the family and victims, let them know. 

[Prosecutor]:             Sure, I=ll let them know. 

Trial Court:                And it looks like they are trying
to do the best they can to listen, that he asked them to leave when she started
to cry, and it wasn=t a verbal or outward
cry.  Of course, the jury saw her crying.


[Defense counsel]:    Yes, sir. 

Trial Court:                He also asked them to leave
before he shows them State=s Exhibit 15, which is going to be hard for them
to look at, but again, [Name of Prosecutor], if you can stress to them if they
feel like they are going to get emotional, to please leave the courtroom. 

[Prosecutor]:             I
will, Your Honor. 

[Defense counsel]:    Thank you, Judge.  Again, I know that that=s hard to control.  Everybody is pretty shaken by that. 

Trial Court:                Do you have other witnesses in
the courtroom? 

[Prosecutor]:             No,
sir.  The only witness I had in the
courtroom was Priscilla Alvardo, the sister. 

[Defense counsel]:    Okay. 
And I don=t have a problem with
her.  I=ll excuse her. 

[Prosecutor]:             That=s all.  There are no other witnesses in the
courtroom.  And I wouldB

Trial Court:                Okay. 

[Prosecutor]:             I
would ask [Defense Counsel] to excuse Priscilla from the Rule. 

[Defense counsel]::   And I will excuse her. 

Trial Court:                Okay.  Very good . . .  You may proceed. 

 








Except
for certain exceptions not applicable here, to preserve error for appellate
review, trial counsel must object and pursue his objection until counsel
receives an adverse ruling.  See
Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999).  To reach the level of an adverse ruling,
counsel must first object, and if the objection is sustained, he must follow
that with a request for an instruction to disregard, and finally, if necessary,
move for a mistrial.  See Cook v.
State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993).  If trial counsel does not receive an adverse
ruling, the error is not preserved for appellate review.  See Nethery v. State, 692 S.W.2d
686, 701 (Tex. Crim. App. 1985).

In Ramirez
v. State, the Texas Court of Criminal Appeals held that an adverse ruling Amust be
conclusory; that is, it must be clear from the record the trial judge in fact
overruled the defendant=s
objection or otherwise error is waived.@  815 S.W.2d 636, 643 (Tex. Crim. App.
1991).  Here, there was no definitive
adverse ruling against appellant. 
Indeed, appellant affirmatively stated that he did not have a problem
with the decedent=s sister
(Priscilla) remaining in the courtroom. 
Appellant failed to pursue his objection to an adverse ruling and
thereby waived his complaint.  We
overrule his fourth issue.

E.     Did the trial court err by
allowing the prosecutor to argue facts allegedly outside the record? 

 

In his
fifth issue, appellant argues that the trial court erred by allowing the State
to argue facts outside the record. 
Generally, appellant complains that the State was allowed to make
references that linked appellant to the crime in a way that the evidence did
not and could not prove.  Appellant has
four specific complaints within this issue, one of which occurred during
examination of a witness, and the other three during the prosecutor=s final
argument. 

First,
appellant complains of the following testimony during re-direct examination of
Adam Roque: 








Q:        No one slammed in the back of you, did they, while you were
sleeping in your truck waiting for JesseB

A:        No, sir. 

Q:        - -for the entire hour and a half? 

A:        No, sir.

Q:        And that was presumable [sic] because they were driving in
their lanes of traffic? 

A:        That=s correct.

Q:        And then along comes the defendant? 

 

At this
point, appellant objected on the grounds that the question assumed facts not in
evidence.  The trial court overruled this
objection.  The question was never
answered.  Even if the trial court erred
in overruling this objection, the record does not show that this would be
reversible error.  Under Rule 44.2(b), we
are to disregard any error unless it affects appellant=s
substantial rights.  Tex. R. App. P. 44.2(b).  A substantial right is affected when the
error had a substantial, injurious effect or influence on the jury=s
verdict.  See King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997).

In this
case, there was a substantial amount of properly admitted testimony regarding
appellant=s link to the silver Lincoln
Continental.  For instance, Detective
Morton Grant testified that when he arrived on the scene appellant was still
behind the wheel of the Lincoln.  There
was no evidence that anyone other than appellant had been driving the Lincoln
at the time of the accident.  In
addition, there is properly admitted testimony that shows appellant had to be
removed from the Lincoln with the Ajaws of
life.@  Thus, we conclude that, even if the trial
court erred in overruling appellant=s
objection to the prosecutor=s
statement, this error would not affect appellant=s
substantial rights.  See Tex. R. App. P. 44.2(b).

Next,
appellant complains about three statements by the prosecutor during closing
argument.  The first statement by the
prosecutor is as follows: 








His defense, all of the
sudden, is they didn=t prove it was my client,
Jack Hammett, who was operating the silver Lincoln Town car at the time. This
isn=t him. This isn=t him trapped in the
bent-up wreckage of his vehicle. 

 

Appellant objected that there was
no evidence that it was appellant=s
vehicle.  The trial court overruled this
objection.  We do not find any error with
the trial court=s ruling
on this objection.  See Richards v.
State, 912 S.W.2d 374 (Tex. App.CHouston
[14th Dist.] 1995, pet. ref=d)
(holding prosecutor=s
statement regarding the complainant=s
truthfulness was not an improper attempt to bolster his testimony; the
statement could have reasonably been derived from the complainant=s answers
before the jury).

The
second statement that drew an objection during closing argument is as follows: 

[Prosecutor]:                         You
heard cars had to swerve. Can you imagine? It doesn=t take a leap of faith.
You=re driving down I-45 with
your family and all of the sudden in the rearview mirror, here he comes. 

[Defense Counsel]:   Judge, I=m going to object. That=s not the evidence. It=s outside the record.
Nobody identified him as the one doing the swerving. 

Trial Court:                Again, ladies and gentlemen. You=re the judges of what was
testified to and what was not testified to in the jury [sic] . 

[Prosecutor]:                         AOh, my God. What do I do?
Where do I go? How do I get out of his way?@ What=s going through your mind?
And then there he is.  You=re trapped. There=s a car to your right and
there=s an idiot to your leftC

 

At this point, appellant objected
that this argument was outside the record, and the trial court overruled his
objection. 

The last
statement in question is as follows:








If you=re going to go back there
and find this man not guilty because, well, geez, the State didn=t prove he was driving,
that=s insane.  I guess since that seems to be his only
concern, he=s alreadyChe has no dispute to the
fact that the driver of that silver Lincoln Continental [sic] was acting in a
gross deviation from the ordinary standard of care.

 

Appellant objected that this
argument was outside the record, and appellant received an adverse ruling.  We conclude that appellant properly preserved
error as to these last two complaints.

Presuming
for the sake of argument that the trial court erred in overruling appellant=s
objections  to the last two comments, the
record does not show reversible error. 
Under Rule 44.2(b), we are to disregard any error unless it affects
appellant=s substantial rights.  Tex.
R. App. P. 44.2(b).  A substantial
right is affected when the error had a substantial, injurious effect or
influence on the jury=s
verdict.  See King, 953 S.W.2d at
271.  In making a determination under
Rule 44.2(b), we consider three factors: (1) severity of the misconduct (the
magnitude of the prejudicial effect of the prosecutor=s
remarks), (2) measures adopted to cure the misconduct (the efficacy of any
cautionary instruction by the judge), and (3) the certainty of conviction
absent the misconduct (the strength of the evidence supporting
conviction).  Mosley, 983 S.W.2d
249, 259 (Tex. Crim. App. 1998).








We
conclude that the comments made by the prosecutor (even combined) did not
amount to severe misconduct.  The
prosecutor=s comments were summations or
reasonable deductions of the testimony and evidence given at trial (including
the testimony of Detective Grant) and therefore, these comments were not
prejudicial.  See Felder v. State,
848 S.W.2d 85, 94B95 (Tex.
Crim. App. 1992).  In this case, there
was a substantial amount of properly admitted testimony regarding appellant=s link to
the silver Lincoln Continental.  As
previously noted, Detective Morton Grant testified that when he arrived on the
scene appellant was still behind the wheel of the Lincoln.  There was no evidence that anyone other than
appellant had been driving the Lincoln at the time of the accident.  In addition, there is properly admitted
testimony that shows appellant had to be removed from the Lincoln with the Ajaws of
life.@  Moreover, even though no curative action was
taken, given the mildness of the comment and the strength of the State=s case,
we find that the error, if any, did not affect appellant=s
substantial rights and therefore is harmless. Accordingly, we overrule
appellant=s fifth issue. 

F.        Did the trial court err by allowing
alleged sidebar comments from the prosecutor? 

 

In his
sixth issue, appellant contends the trial court erred by allowing the State to
make several sidebar comments throughout the trial.  Specifically, he points to the following
comment made by the State while questioning the forensic pathologist: 

[Prosecutor]:                         .
. . do you think that [sic] would constitute a gross deviation from the
ordinary standard of care? 

[Defense Counsel]:   Objection. 
Calls for legal conclusion.  He=s not qualified to make
that summation.  Objection to improper
predicate. 

[Prosecutor]:             He=s just a person.  He got into the whole accident issue.  I=m going to try to see
whether or not he would still refer to this as an accident the way [Defense
Counsel] has attempted to make this jury believe he=s using the word Aaccident.@ 

[Defense Counsel]:   I object to the sidebar, Judge.  I=m going to object to the
speaking objections.  I ask that they be
stricken from the record. 

Trial Court:                Sustained. 

 

Appellant
did not ask for any further relief. We conclude that appellant has not
preserved error.  To preserve error for
appellate review, trial counsel is required to object and pursue his objection
to an adverse ruling.  See Tucker,
990 S.W.2d at 262.  To reach the
level of an adverse ruling, counsel first must object, and if the objection is
sustained, he must follow that with a request for an instruction to disregard,
and finally, if necessary, move for a mistrial.  See Cook, 858 S.W.2d at 473.  Without an adverse ruling, the defendant has
been given all the relief requested at trial and he will not be heard to
complain on appeal.  Id. at 473.
 Accordingly, we overrule appellant=s sixth
issue. 








G.        Did the trial court err by allowing a
police officer to testify regarding his opinion as to whether appellant
committed manslaughter? 

In his
seventh issue, appellant argues that the trial court erred by allowing
Detective Grant to testify as to whether appellant committed manslaughter, an
ultimate issue in the case.  The State
responds that appellant failed to preserve this issue for appellate review
because his objection at trial does not comport with his objection on
appeal.  We disagree with the State.

During
re-direct examination of Detective Grant, the following exchange occurred: 

[Prosecutor]:                         And
based uponChow he explained to you
whether you knew how hard it was or how difficult it was to get to beyond a
reasonable doubt, right, and whenever you know what that standard is, right? 

[Detective Grant]:     Yes. 

[Prosecutor]:                         Based
upon you interviewing the witness and what you saw at the crime scene, do you
think in your opinion that not only did you have probable cause, but you have
beyond a reasonable doubt that this man committed the offense of manslaughter? 

[Defense Counsel]:   Judge, I=m going to object.  That=s irrelevant.  It calls for a legal conclusion.  This witness hasn=t been qualified as a
legal expert in this matter.  He=s not an attorney. 

[Prosecutor]:                         [Defense
Counsel] was the one who brought up the whole issue of standard of proof and do
you know the difference between the two of them and what do you have to act
upon? I=m developing that further
with the detective, your Honor.

Trial Court:                Objection overruled. 

 








Appellant=s
objection on appeal is similar in that he also argues that Detective Grant was
not qualified as an expert on this issue. 
However, all of  appellant=s
references to legal authorities in support of this issue do not refer to
testimony of expert witnesses.  Appellant
makes reference only to Texas Rule of Evidence 701 in his argument.  This rule relates to lay witness testimony,
not expert witness testimony.  Whether an
opinion meets the fundamental requirements of Rule 701 is within the sound
discretion of the trial court and its decision regarding admissibility should
be overturned only if there is an abuse of discretion.  Joiner v. State, 825 S.W.2d 701,
708 (Tex. Crim. App. 1992). 

Without
reaching the issue of whether Detective Grant=s
testimony was admissible lay witness testimony, we conclude that the trial
court did not abuse its discretion in overruling appellant=s trial
objection.  During cross-examination,
Detective Grant was questioned by appellant=s trial
counsel as follows: 

Q:        You would want to know all that before you made up your mind
with respect to whether you had reason to believe something had happened that
violated a law?  That=s called probable cause,
right? 

A:        Right.

Q:        And that=s not beyond a reasonable
doubt, is it? 

A:        No.

Q:        It=s way below it, isn=t it? 

A:        It=s not way below it.  It=s just part of the case. 

Q:        It=s not way below?  Well, do you know the different standards of
proof as we go up the scale? 

A:        Yes. 

Q:        So, you=re familiar with probable
cause? 

A:        Yes, sir. 

Q:        Then you=re also familiar with
civil case is [sic] preponderance of the evidence? 

A:        Right. 

Q:        That=s right here right next to
it, going up.  Clear and convincing
evidence, you=re familiar with that. You
do child abuse. [sic]  That=s how you take somebody=s children away? 

A:        Exactly. 








Q:        Way over here, beyond a reasonable doubt, before you take
someone=s liberty, right?  You=re familiar with
that.  Okay, good.

Now, so the decision you
made, when you formed some opinion, whatever that opinion was about what had
happened out there, that was down at the bottom of the scale.  A little bit above reasonable suspicion, but
a couple of links below on the chain beyond a reasonable doubt? 

A:        Right.  I got you. 

 

Appellant further tried to narrow
Detective Grant=s
opinions and findings as probable cause. 
Once appellant opened the door to this line of questioning, the State
was fully justified in developing this testimony (in regard to the different
standards of proof) during its re-direct examination.  When defense counsel pursues a subject that
ordinarily would be outside the realm of proper comment by the prosecutor, he
opens the door and creates a right of reply for the State.  Parr v. State, 557 S.W.2d 99, 102
(Tex. Crim. App. 1977); Gilbert v. State, 874 S.W.2d 290, 297 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d).  Once a matter is injected into the
proceeding, evidence to fully explain the matter becomes relevant and
admissible, even though the evidence might not otherwise be admissible.  Id. 
Having opened the door, appellant is in no position to complain about
this testimony.  See Nelson v. State,
503 S.W.2d 543, 545 (Tex. Crim. App. 1974). 
Accordingly, we overrule appellant=s seventh
issue. 

H.        Does the cumulative effect of all of the
errors stated in issues one through seven constitute reversible error? 

 

In his
eighth issue, appellant argues that the cumulative effect of all errors
asserted in issues one through seven constitute reversible error.  In this case, however, we have examined
appellant=s allegations of error
individually and concluded each lacked merit. 
The cumulative effect of issues not found to be reversible error cannot
constitute reversible error. See Chamberlain v. State, 998 S.W.2d 230,
238 (Tex. Crim. App. 1999) (stating A[b]ut, we
are aware of no authority holding that non‑errors may in their cumulative
effect cause error@). Accordingly,
we overrule appellant=s eighth
issue.








Having
overruled all of appellant=s issues,
we affirm the trial court=s
judgment. 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed
December 15, 2005.

Panel consists of Chief Justice Hedges, and
Justices Fowler and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).