Travis BURKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 865–82.

Court of Criminal Appeals of Texas, En Banc.

July 24, 1985.

Donald W. Rogers, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., & Winston E. Cochran, Jr., & Kris Moore, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This appeal is from a conviction for forgery by possession. V.T.C.A., Penal Code, § 32.21(a)(1)(C) and (b). Punishment was assessed at life imprisonment upon the jury's finding that appellant had been twice previously convicted of felonies as alleged in the indictment.[1] V.T.C.A., Penal Code, § 12.42(d), prior to its 1983 amendment.

On appeal the appellant, inter alia, challenged the sufficiency of the evidence to sustain the conviction. The Corpus Christi Court of Appeals reversed the conviction sustaining the contention and reforming the judgment to reflect an acquittal. *Burks v. State*, 654 S.W.2d 6 (Tex.App.-Corpus Christi 1982). We granted the State's petition for discretionary review to determine the correctness of the Court of Appeals' decision that the evidence was insufficient.

The evidence established that on September 22, 1979, 2500 payroll checks printed for Fish Engineering and Construction, Inc. (hereinafter Fish Engineering) disappeared from a delivery truck for Wilson Stationery and Printing Company. Frank Jolly, Director of Printing for Wilson Printing, notified both Fish Engineering and the bank involved that the checks were missing on that date.

Thomas F. Forehand, Jr., Comptroller of Fish Engineering, testified his firm ordered checks from the stationery company for a new account with the Pasadena National Bank. The 2500 checks were to be numbered 95001 to 97500. Those authorized to sign the Fish Engineering account checks at the Pasadena bank were Forehand, Gene Brian Smith and O.R. Smith. No checks

---

1. The two prior felony convictions were alleged and found to be for felony theft and possession of heroin.

were ever cashed on that account. Howard Walters, personnel manager for Fish Engineering, testified Fish never had an employee by the name of Ed Saunders or Travis Burks (appellant).

On October 4, 1978, the appellant and three other persons were arrested for investigation of narcotics. At the time the appellant was in a small pickup truck that was blocking traffic. The arrest and search are not challenged.

Houston city police officer D.A. Baskin asked appellant for some identification when he first got out of the pickup. Appellant produced none initially. He then pulled his wallet out and proceeded to go through it and said he didn't have a driver's license. Officer Baskin observed a driver's license in the wallet and asked what it was. Appellant then pulled it out saying, "Oh, here it is." The name on the driver's license was Robert Lee Boykin, Jr. Appellant insisted the driver's license was his and that he was Boykin. Baskin observed the picture on the driver's license was not that of appellant and that appellant acted "strange and extremely nervous." A subsequent search of the wallet revealed the check, the subject of the instant prosecution. It was Fish Engineering check No. 97492, dated September 28, 1978, in the amount of $289.71, drawn on the Pasadena National Bank, and made payable to Robert Lee Boykin, Jr. It was purportedly signed by Ed Sanders. The check was purportedly endorsed by Boykin. Under the endorsement appeared an address, a driver's license number and a phone number.

Another police officer found 75 to 100 Fish Engineering checks inside a newspaper on the floorboard of the pickup truck driven by appellant. Some of these checks were still blank and some partially completed.

Robert Lee Boykin, Jr., testified he was employed at Smith Industries and had never been employed by Fish Engineering. He identified the driver's license found on appellant as his which had been lost for about a year and a half before trial. He observed that on the back of the license someone had purported to write his signature, but it was not his. Boykin had never before seen the check in question. He observed that the endorsement bore his name but an incorrect address and telephone number although the driver's license number was correct. Boykin did not know appellant or any of the individuals arrested with him, and did not give any of them or anyone else permission to use his driver's license.

The appellant did not testify.

Since 1858 Texas has had a statute prohibiting possessing a forged instrument or writing with intent to pass the same as true. *Smith v. State,* 108 Tex.Cr.R. 358, 300 S.W. 82 (Tex.Cr.App.1928). Under the former Penal Code Article 998, V.A.P.C. (1925), provided:

"If any person shall knowingly have in possession any instrument of writing the making of which is by law an offense, with intent to use or pass the same as true, he shall be confined in the penitentiary not less than two nor more than five years."

Article 998 was carried forward into V.T. C.A., Penal Code, § 32.21 (1974). Said § 32.21, under which the instant indictment was drafted, provides in part:

"(a) For purposes of this section:

"(1) 'Forge' means:

"(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

"(i) to be the act of another who did not authorize that act;

"(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

"(iii) to be a copy of an original when no such original existed;

"(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A) of this subdivision; or

"(C) to possess a writing that is forged within the meaning of Para-

graph (A) with intent to utter it in a manner specified in Paragraph (B) of this subdivision.

"(2) 'Writing' includes:

"(A) printing or any other method of recording information;

"(B) money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and

"(C) symbols of value, right, privilege, or identification.

"(b) A person commits an offense if he forges a writing with intent to defraud or harm another."

The Practice Commentary to V.T.C.A., Penal Code, § 32.21 provides in part:

"Section 32.21 consolidates a number of provisions of the old Penal Code covering forgery of different kinds of documents, e.g. Penal Code arts. 979 to 998 and 1006 to 1011* * *

"Subsections (a)(1) retains the three kinds of criminal acts in prior law: (1) altering or making; (2) uttering; and (3) possessing with intent to utter. The culpable mental state requirement of prior law—intent to defraud (Penal Code arts. 979, 984)—is carried forward, but an alternative intent to harm—has been added."

The Explanatory Comment to § 32.21, Texas Annotated Penal Statutes, Branch's 3rd Ed., Vol. 2, p. 529, provides in part:

"This section (32.21) consolidates a number of provisions relating to forgery of various documents (Arts. 979–998 and 1006–1011). * * * By broadening the definition of 'writing,' as contained in Subsection (b)(2), and removing the requirement that the writing affect a pecuniary interest in property, it is possible to cover all types of forgery in one statute. You will note that the definition of 'forge' includes the three kinds of criminal acts in our present law:

"(1) making or altering,

"(2) passing or uttering, and

"(3) possessing with intent to utter.

The present 'intent to defraud' is carried forward into this statute, but in addition thereto intent to harm will suffice. It is felt that by virtue of this definition of 'harm,' the offense is extended to nonmonetary and nonproperty injuries."

With this background we examine the holding of the Court of Appeals that the evidence was insufficient to sustain the conviction. The court wrote:

"Although the State proved that the appellant possessed a forged check, the evidence is insufficient to prove that the appellant knew that the check was forged or that he possessed the check with an intent to utter it or that he intended to harm or defraud another. We fail to perceive how possession with the intent to utter can be proven absent evidence that the accused passed or attempted to pass the forged writing. See *Pfleging v. State*, 572 S.W.2d 517 (Tex. Cr.App.1978), and *Stuebgen v. State*, 547 S.W.2d 29, 32 (Tex.Cr.App.1977).

"We hold that mere possession of a forged writing, as in the case here, is insufficient to sustain a conviction under § 32.21(a)(1)(C) and (b) of the Penal Code."

■ As noted earlier, V.T.C.A., Penal Code, § 32.21(a)(1) retained the three kinds of criminal acts from the prior law (1) making or altering, (2) passing or uttering and (3) possessing with intent to utter. It would make little sense for the Legislature to have retained the "possessory" offense if to prove the same it would require the offense of passing [§ 32.21(a)(1)(B) and (b)] or attempting to pass [V.T.C.A., Penal Code, §§ 32.21(a)(1)(B), (b) and 15.01] to also be proven. There would be no reason for criminalizing forgery by possession since the other penal provisions mentioned would cover the same conduct. Rather, it is to be presumed that the entire statute is intended to be effective. Article 5429b–2, § 3.01(2), V.A.C.S. (Code Construction Act).[2]

---

**2.** In its brief the State wrote: "To paraphrase Brutus, the Legislature intended to crush the serpent in its shell before it could become mischievous."

 Passing or attempting to pass a forged writing is not an element of the offense charged in the instant case. The elements of forgery by possession with intent to utter are (1) a person (2) "forges" (3) a writing (4) within intent to defraud or harm (5) another. In "possession" cases the term "forge" in § 32.21 means "(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B) of this subsection." While evidence of a passing or attempted passing of a forged instrument would certainly aid a State's case of possessing a forged instrument, such evidence is not absolutely essential.

The *Pfleging* and *Stuebgen* cases, relied upon by the Court of Appeals, are distinguishable from the instant case. They were prosecutions for forgery by passing, not forgery by possessing. In each of these cases the accused passed a check made out to himself as the payee and did not falsely represent himself.

Stuebgen challenged the sufficiency of the evidence to show he had the intent to defraud or harm another. In *Stuebgen* we stated:

"In the instant case, the record reflects that appellant made no statement from which it could be inferred that he knew the instrument was forged. *Appellant was listed as the payee, and appellant did not falsely represent himself.* No evidence was introduced to show that anything appearing on the check was in appellant's handwriting. Although appellant had access to Chitwood's checkbook, and Chitwood normally paid his employees personally, we do not find that this evidence is sufficient to discharge the State's burden of showing that appellant acted with intent 'to defraud or harm another.'

"We do not find the evidence sufficient to show that appellant knew the instrument he passed was forged. If there be other means of showing intent 'to defraud or harm another' in cases such as this, which we are presently unable to

envision, the record in the instant case is devoid of same." (Emphasis supplied.)

In *Pfleging* the question again was the sufficiency of the evidence to show the requisite culpable mental state of "intent to defraud or harm another." Pfleging went to a bank to cash a $3,500.00 check, to make a payment on an out-of-state credit card and receive $2,000.00 in cash. Pfleging was the payee as in *Stuebgen,* but it was held that while the State proved the check was forged, it failed to show Pfleging knew the check was a forgery or that she passed or attempted to pass the check with intent to defraud or harm another. We fail to perceive how *Stuebgen* and *Pfleging* can be used to support the Court of Appeals' conclusion that a possession of a forged writing case cannot be proved without evidence the accused passed or attempted to pass the forged instrument.

Under V.T.C.A., Penal Code, § 32.21, the definition of forgery requires as an essential element of the offense an intent to defraud or harm. *Jones v. State,* 545 S.W.2d 771 (Tex.Cr.App.1977); *Stuebgen v. State,* supra; *Baker v. State,* 552 S.W.2d 818 (Tex.Cr.App.1977). See also *Pfleging v. State,* supra; *Solis v. State,* 611 S.W.2d 433, 434 (Tex.Cr.App.1981); *Crittenden v. State,* 671 S.W.2d 527 (Tex.Cr.App.1984). And it is necessary to prove this element of the offense.

In connection with this essential element, this Court stated in *Pfleging* at p. 519:

"In *Stuebgen v. State,* supra, and *Baker v. State,* supra, we said

"'While the requisite culpable mental state under Section 32.21(b) is "intent to defraud or harm," we fail to perceive how such culpable mental state can be shown absent proof of knowledge that the instrument is forged.'"

 While this is true, and while the burden is upon the State to prove every element of the offense charged, *Reed v. State,* 533 S.W.2d 35 (Tex.Cr.App.1976); *Young v. State,* 529 S.W.2d 542 (Tex.Cr. App.1975), the State may, of course, establish intent to defraud or harm by circum-

stantial evidence as well as by direct evidence. *Baker v. State,* supra; *Stuebgen v. State,* supra; *Pfleging v. State,* supra; *Watson v. State,* 418 S.W.2d 822 (Tex.Cr. App.1967). See also *Meade v. State,* 641 S.W.2d 345, 347 (Tex.App.-Corpus Christi 1982).[3]

In the instant case the court charged the jury abstractly in part as follows:

"1.

"Our law provides that a person commits an offense if he forges a writing with intent to defraud or harm another. Forgery is committed by altering, making, completing, executing, or authenticating any writing so that it purports to be the act of another who did not authorize that act. The offense of forgery is also committed by possessing a writing that is forged within the meaning of the preceding sentence with the intent to utter it, when the person so possessing it did so with knowledge that it was forged and with the intent to defraud and harm.

"2.

"The possession of a forged writing with intent to utter, to constitute a forgery, must be done with intent to defraud or harm another, but it is not required, to constitute such offense, that the person in committing it intended to defraud or harm any particular person, or that any particular person was defrauded or harmed by the forgery. It is sufficient if it appears that someone might be injured or defrauded thereby, but the jury must believe from the evidence beyond a reasonable doubt that the intent of the person was to defraud or harm some person by the means alleged."

The court later applied the law to the facts and also charged on the law of circumstantial evidence. See and cf. *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr.App.1981). The jury returned its verdict of guilty.

3. In *Verner v. State,* 117 Tex.Cr.R. 112, 35 S.W.2d 428 (Tex.Cr.App.1931), it was held that forgery and knowledge by a possessor of a

In *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex.Cr.App.1983) (Opinion on State's Motion for Rehearing), this Court stated the standard for appellate review in circumstantial evidence.

"It follows that circumstantial evidence should not be tested by an *ultimate* 'standard for review' different from direct evidence; the standard in both kinds of cases is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Accord *Griffin v. State,* 614 S.W.2d 155 (Tex.Cr.App.1981).

"Still we are unable to devise or discover any reason, compelling or otherwise, for abandoning the utilitarian 'exclusion of outstanding reasonable hypotheses' analysis for *applying* the above 'standard for review' in circumstantial evidence cases."

See also *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Cr.App.1983) (Opinion on State's Motion for Rehearing); *Denby v. State,* 654 S.W.2d 457, 464 (Tex.Cr.App.1983); *Freeman v. State,* 654 S.W.2d 450, 456 (Tex.Cr.App.1983) (Opinion on State's Motion for Rehearing).

Further, in reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, the reviewing court must view the evidence in the light most favorable to a jury's verdict and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hudson v. State,* 675 S.W.2d 507 (Tex.Cr.App.1984); *Bonham v. State,* 680 S.W.2d 815 (Tex.Cr. App.1984); *Garrett v. State,* 682 S.W.2d 301 (Tex.Cr.App.1984); *McGoldrick v. State,* 682 S.W.2d 573 (Tex.Cr.App.1985).

With these standards we take a look at the evidence before the jury.

The direct evidence shows the appellant was in possession of the check in question. It was in his wallet, which he took out of his pocket. The check was one of the Fish Engineering checks which had disappeared

forged instrument can be proved by circumstantial evidence.

from a delivery truck of the printing company several days earlier. The amount of money had been written onto the check by a check writing machine. The other blanks on the check were filled out by a typewriter. The payee was Boykin and the check was signed on behalf of Fish Engineering by Ed Sanders. Neither Boykin, Sanders nor appellant had any connection with Fish Engineering. No one with Fish had authorized the giving of the check. Thus there was direct evidence that the check had been made so that it purported to be the act of another who did not authorize the act. In addition, the check had been endorsed with Boykin's name. Boykin testified it was not his signature, and the address and telephone number given were incorrect. The driver's license number given, however, was Boykin's.

When arrested, appellant was in possession of Boykin's driver's license, which had been lost a year or so before trial. A driver's license is a common form of identification used when cashing checks. Appellant insisted that the Boykin driver's license was his and that he was Boykin. The officer recalled appellant acted strange and was nervous at the time. Boykin's name had been written on the back of the license. Boykin stated that the signature was not his and was not on the license when he lost it. In the pickup truck in which the police found appellant there were discovered 75 to 100 of the missing Fish Engineering bank checks inside a newspaper. Some of the checks had been partially filled out with names of payees, etc.

While it is true that the State did not attempt to prove that any of the handwriting on the check [4] was appellant's, it should be remembered that in possession of forged instrument cases it is not required that the accused forge the instrument to constitute the offense. *Fifer v. State,* 451 S.W.2d 757 (Tex.Cr.App.1970).

This then is the evidence that was before the jury, and which the State claims was

---

4. The only handwriting on the check was the signature of Ed Sanders on the face thereof and the endorsement. The rest of the check was

sufficient to supply the deficiencies mentioned by the Court of Appeals, and to sustain the conviction, albeit circumstantial evidence.

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude any rational trier of fact would have found all the essential elements of the charged offense beyond a reasonable doubt.

The judgment of the Court of Appeals is reversed and the cause remanded for consideration of appellant's other grounds of error.

TEAGUE and CLINTON, JJ., not participating.

printed or filled in by a check writing machine or typewriter.