COURT OF APPEALS









 

 

 

 

COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

SANDRA ROMERO,                                           )

                                                                              )              
No.  08-03-00520-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
168th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20030D03195)

                                                                              )

 

 

O
P I N I O N

 

Appellant Sandra
Romero appeals her conviction for three counts of tampering with governmental
records.  The jury found Appellant guilty
on all three counts and the trial court assessed punishment at 2 years= confinement in a state jail facility,
probated to 4 years=
community supervision, and restitution in the amount of $5,555.30.  In six issues, Appellant argues that the
evidence is legally and factually insufficient and that the trial court erred
in denying her request for a lesser-included offense instruction in the jury
charge.  We affirm.








In July 2000,
Appellant applied for government assistance through the Texas Department of
Human Services (ATDHS@). 
Appellant completed a written application form and in response to the
following question:  AHow much cash money do you and all
those who live with you have (in pockets, bank accounts, anywhere else)?,@ Appellant wrote in $20.  Appellant applied for governmental assistance
again in September 2000 and in January 2001. 
In the September 2000 application form she reported $0 in response to
the same question and in the January 2001 application form she reported $30.

In March 2003,
Eric Brown, an investigator with the TDHS, received a referral to investigate
Appellant=s
case.  Mr. Brown reviewed Appellant=s original application and found no
indication that a certain alleged bank account had been reported.  On April 11, 2003, Mr. Brown went to the
Government Employees Credit Union (AGECU@) and reviewed bank records and
determined that Appellant had an account with GECU, which had not been reported
on the applications nor had it been noted in the case worker=s documentation from Appellant=s 

in-person interview.  The GECU account was a joint certificate of
deposit (ACD@) account held by Appellant and her
husband.  Mr. Brown contacted Appellant
and her husband by telephone and met with them on April 16, 2003.  During the meeting Mr. Brown verified
Appellant=s
signatures on the application forms.  As
a result of her applications, Appellant qualified for and received government
assistance in the amount of $3,753 in food stamps and $1,802.30 in Medicaid
benefits.  Mr. Brown testified that
Appellant would not have been eligible for the food stamps or Medicaid benefits
her household received if she had reported the CD account.








Maria Guerrero, a
supervisor at GECU testified that Appellant, also known as Sandra Lynn Garcia,
and Jose A. Romero opened a joint CD account on June 27, 2000 with a deposit of
$3,000.  The original term of the account
was for a period of 24 months, with a compounded interest rate of 6.35 percent.  Ms. Guerrero stated that a CD account is an
account in which money is deposited for an extended amount of time with
limitations placed on its withdrawal.  If
money is withdrawn before the maturity date, a penalty is imposed, depending on
the terms of the account.  If the account
is a long-term CD, that is, for more than six months, the penalty for early
withdrawal is 180 days=
worth of interest.  Ms. Guerrero
testified that Appellant=s
CD account contained an early withdrawal penalty of 180 days= worth of interest on the account.[1]  Ms. Guerrero explained that 180 days
after opening a CD account with $3,000, if the account holder then withdrew
early, that individual would lose 180 days=
worth of interest, but would have at least the principal $3,000.  There was a withdrawal from Appellant=s CD account (a transfer into a savings
account) on June 28, 2002, which was after the maturity date on this particular
CD.  For a $3,000 CD account, the penalty
for early withdrawal would have been approximately $96.








On
cross-examination, Ms. Guerrero agreed that GECU invests the money that an
individual deposits into a GECU account and that the individual has no say in
how the money is invested.  She agreed
that when an individual opens a certificate of deposit account, that individual
is entering into a contract with the bank. 
However, she stated that the parties=
contract sets out a penalty for any withdrawal before the maturity date.  Ms. Guerrero conceded that if a penalty is
assessed, that would mean that the contract had been violated.  However, GECU has never sued a CD account
holder for breach of contract for early withdrawal.  

Rosa Solano, TDHS
Texas works advisor and eligibility specialist on Medicaid and food stamps,
testified about the application process for the governmental assistance
programs.  Ms. Solano explained that
prospective clients must complete a written application for assistance, form
1010, followed by an oral interview with an advisor a week or two after the
form is submitted.  During the interview,
the advisor verifies all the information provided to determine eligibility and
if found eligibility, the amount of food stamp benefits the individual will
receive.  According to Ms. Solano, it was
TDHS policy that all sources of income and assets must be reported on the
application form.  The department then
determines what will or will not be counted in determining eligibility for
assistance.








Three years ago,
Ms. Solano was Appellant=s
caseworker.  Ms. Solano testified that
she met with Appellant in person and received the application forms from
Appellant.  As a result of submitting the
applications, Appellant received benefits. 
Ms. Solano could not remember Appellant personally, but stated that she
took notes on her case in the computer system. 
She testified that she has never told any prospective client that he or
she did not have to report a particular type of income.  Ms. Solano emphasized that to her knowledge,
all income and assets have to be reported, and as a general policy, they are
told to report everything and then the department determines whether it counts
or does not count.  According to her
notes on Appellant=s
interview, she and Appellant discussed child support income.  Ms. Solano testified that it was normal
policy to report child support payments as income on the form.

Appellant
testified in her defense.  Appellant
explained that in June 2000, she received a $3,800 check from the Attorney
General=s Office
for back pay on child support owed to her from her ex-husband for child support
to her oldest son.  Appellant went to the
bank and opened a CD account with $3,000 and used the remaining $800 to repay a
loan to her mother.  Appellant stated
that she and her current husband decided to open the CD account in order to
save the back pay of child support money for her oldest son.  It was her understanding that when she
deposited the money into the account, it was locked in for 24 months, and was
no longer her money.  Under the contract
with GECU for that account, she was not allowed to withdraw any money prior to
the maturity date.  They knew that there
was a penalty and they had no intention of getting penalized. 

Appellant admitted
that in July 2000, she filled out the application for food stamps and Medicaid
benefits.  At the time, her husband was
going to school and working part-time and they needed the assistance.  With regard to the question:  AHow
much cash money do you and all those who live with you have (in pockets, bank
accounts, anywhere else)?;@
Appellant left that question blank because she wanted to make sure that she
answered it correctly.  When she met with
the case worker, she told the case worker that she had left the question blank
because she was not sure how to answer it. 
After speaking with the case worker, Appellant believed that she did not
have to report the $3,000.  According to
Appellant, she relied on the case worker=s
advice and did not think she need to claim the $3,000 because it was back pay
for child support owed to her from years ago.

 








In September 2000
and January 2001, Appellant filled out the application forms again in order to
renew her benefits.  Based on the prior
answer from the case worker during the first interview, it was Appellant=s understanding that the $3,000 was not
part of her current income and did not need to be reported because it was money
that was back paid.  Appellant testified
that putting the $3,000 into a CD account had not affected her decision in
answering the question.  Appellant
believed that she had filled out the application forms correctly and truthfully
and had not knowingly made a false entry. 
Appellant denied that her intent was to defraud or harm anyone when she
filled out the applications.

In Issue One,
Appellant contends that the trial court erred in denying her request for
submission of the lesser-included offense of tampering with governmental record
without the element of intent to defraud or harm.  A person commits the offense of tampering
with governmental record if she Aknowingly
makes a false entry in, or false alteration of, a governmental record.@ 
See Tex.Pen.Code Ann.
' 37.10(a)(1)(Vernon Supp.
2004-05).  The Texas Penal Code provides
for both misdemeanor and felony degrees of tampering with a government record.  See id. at '
37.10(c)(1).  Appellant was charged with
three counts of the state jail felony, therefore, the State was required to
prove her intent to defraud or harm another. 
See id.  The Penal Code
defines harm to mean Aanything
reasonably regarded as loss, disadvantage, or injury, including harm to another
person in whose welfare the person affected is interested.@ 
Tex.Pen.Code Ann. ' 1.07(a)(25)(Vernon Supp.
2004-05).  The jury charge defined Aintent to defraud@ to mean Ato
act with the intent to cheat or deceive, ordinarily for the purpose of causing
a financial loss to someone else or bring about a financial gain to one=s self.@

 








We apply a two-prong
test to determine whether Appellant was entitled to a charge on a
lesser-include offense.  See Bignall
v. State, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994); Rousseau v. State,
855 S.W.2d 666, 672 (Tex.Crim.App. 1993)(en banc); Ramirez v. State, 976
S.W.2d 219, 226-27 (Tex.App.--El Paso 1998, pet. ref=d).  First, the lesser-included offense must be
included within the proof necessary to establish the offense charged.  Bignall, 887 S.W.2d at 23; Rousseau,
855 S.W.2d at 672-73; see also Tex.Code
Crim.Proc.Ann. art. 37.09(1)(Vernon 1981).  The State concedes that tampering with a
governmental record without intent to defraud or harm is a lesser-included
offense and agrees that the first prong is satisfied in this case.

Under the second
prong, some evidence must exist in the record that would permit a rational jury
to find that if the defendant is guilty, she is guilty only of the lesser
offense.  Rousseau, 855 S.W.2d
672-73; Licon v. State, 99 S.W.3d 918, 927 (Tex.App.--El Paso 2003, no
pet.).  A defendant is guilty only of a
lesser-included offense if there is evidence that affirmatively rebuts or
negates an element of the greater offense, or if the evidence is subject to
different interpretations, one of which rebuts or negates a crucial
element.  See Ramirez, 976 S.W.2d
at 227.  It is not enough that the jury
may disbelieve crucial evidence pertaining to the greater offense.  See Skinner v. State, 956 S.W.2d 532,
543 (Tex.Crim.App. 1997).  There must be
some evidence directly germane to the lesser-included for the jury to consider
before the instruction on the lesser-included offense is warranted.  See Bignall, 887 S.W.2d at 24; Ramirez,
976 S.W.2d at 227.  A defendant=s denial of committing any offense does
not automatically foreclose an instruction to the jury on a lesser-included
offense.  See Bignall, 887 S.W.2d
at 24.








Here, Appellant
testified that she did not claim the $3,000 because she was led to believe that
she did not need to report the money because it was back pay for child
support.  In her second and third
applications, she did not report the $3,000 as part of her current income or
assets because she had previously received an answer from the case worker on
the matter.  Appellant testified that she
completed the application forms correctly and truthfully and did not knowingly
make a false entry on the forms. 
Appellant denied that she had the intent to defraud or harm anyone by
filling out the application forms.  By
her testimony, Appellant refuted both the lesser and greater offenses in that
her defense was that no offense had been committed at all.

If the defendant
either presents evidence that she committed no offense or presents no evidence,
and there is no evidence otherwise showing she is guilty only of a
lesser-included offense, then a charge on a lesser-included offense is not
required.  Bignall, 887 S.W.2d at
24, citing Aguilar v. State, 682 S.W.2d 556, 588 (Tex.Crim.App.
1985).  Ms. Solano testified that in
conducting the application process for the governmental assistance programs to
which Appellant had applied, she has never advised a client not to report
certain sources of income and assets.  Rather,
she stated it was TDHS policy that all sources of funds be reported so that the
department can then determine whether it will count or not count in determining
program eligibility.  While Ms. Solano
could not remember her client, Appellant personally, she testified to the
general TDHS policy which if followed, contradicted Appellant=s recollection of events.  Moreover, Ms. Solano stated that she has
never told any client not to report certain kinds of income.  Appellant received food stamps and Medicaid
benefits as a result of her applications for governmental assistance.  Mr. Brown testified that if she had reported
the CD account money, she would not have been eligible for the assistance she
received.








After reviewing
all the evidence presented at trial, along with evidence that Appellant
committed no offense, we conclude there was no evidence otherwise showing
Appellant was guilty of only the lesser-included offense.  Therefore, the trial court did not err in
refusing to charge the jury on the lesser-included offense because such an
instruction was not required.  See
Aguilar, 682 S.W.2d at 558.  Issue
One is overruled. 

In Issues Two
through Six, Appellant challenges the legal and factual sufficiency of the
evidence to support her conviction. 
Specifically, Appellant contends the evidence was legally and factually
insufficient to establish the elements of the offense, namely that she
knowingly made a false entry and that she had the intent to defraud or
harm.  In addition, Appellant argues that
her motions for directed verdict should have been granted as a matter of law
because she answered the question on the government applications correctly.[2]  

Standards
of Review








In reviewing the
legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Burden v.
State, 55 S.W.3d 608, 612 (Tex.Crim.App. 2001).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See
Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v.
State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).  Instead, duty is to determine whether both
the explicit and implicit findings of the trier of fact are rational by viewing
all the evidence admitted at trial in the light most favorable to the
verdict.  See Adelman, 828 S.W.2d
at 421-22.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843.  Further, the standard of review is the same
for both direct and circumstantial evidence cases. Geesa v. State, 820
S.W.2d 154, 158 (Tex.Crim.App. 1991), overruled on other grounds, Paulson v.
State, 28 S.W.3d 570 (Tex.Crim.App. 2000). 

In reviewing the
factual sufficiency of the evidence, we must determine whether considering all
the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004); see also Clewis v.
State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).  There are two ways in which we may find the
evidence to be factually insufficient.  Zuniga,
144 S.W.3d at 484.  Evidence is factually
insufficient when the evidence supporting the verdict, considered alone, is too
weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Evidence is also insufficient when contrary evidence is so strong that
guilt cannot be proven beyond a reasonable doubt.  See id. at 485.  However, in our factual sufficiency review,
we must give appropriate deference to the jury and should not intrude upon its
role as the sole judge of the weight and credibility given to evidence
presented at trial.  See Johnson v.
State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis, 922 S.W.2d at
133.  Accordingly, we are authorized to
set aside the jury=s finding
of facts only in instances where it is manifestly unjust, shocks the conscience,
or clearly demonstrates bias.  Clewis,
922 S.W.2d at 135.

Tampering
with Governmental Records








In this case, the
State was required to prove beyond a reasonable doubt that on three separate
occasions, Appellant knowingly made a false entry in a governmental record,
namely the Texas Department of Human Services governmental assistance
application, with the intent to defraud or harm that agency.  See Tex.Pen.Code
Ann. ' 37.10
(a)(1), (c)(1).

Knowingly
Make a False Entry

In Issues Two,
Five and Six, Appellant challenges the legal and factual sufficiency of the
evidence to support her conviction, arguing that the State failed to establish
that she knowingly made a false entry on the assistance applications.  Specifically, Appellant argues that the
evidence at trial established that Appellant, in fact, answered the questions
correctly and furthermore, the evidence to support the guilty finding is so
weak as to be manifestly unjust.








It is undisputed
that on three separate occasions, Appellant filled out applications for
governmental assistance through the TDHS. 
It is also undisputed that on each occasion, she did not report the $3,000
that she had placed in the GECU CD account on June 27, 2000 when answering the
following question on the forms: AHow
much cash money do you and all those who live with you have (in pockets, bank
accounts, anywhere else)?@  TDHS investigator Eric Brown verified that
Appellant held a CD account with GECU and Appellant had failed to report the
money in the account.  As a result of her
applications, Appellant qualified for and received $3,753 in food stamps and
$1,802.30 in Medicaid benefits.  If she
had reported the $3,000, she would not have received the assistance.  Ms. Solano testified that it was TDHS policy
that all sources of income and assets be reported in the application form.  She explained that the department later
determines what will or will not be counted in determining an individual=s eligibility for assistance.  She testified that she has never told anyone
not to report certain types of income and that it was normal policy to report
child support payments on the forms. 
From this testimony, the jury could have reasonably inferred that Ms.
Solano did not tell Appellant not to report the back pay child support money on
the forms.

Appellant argues
that she, in fact, answered the question correctly because the money that was
deposited in the CD account was back pay for child support and therefore, she
should not have had to claim that money on the applications.  Specifically, she asserts that the question
was designed to determine the applicant=s
present income, not reimbursement for money that Appellant has already
spent.  The jury, however, could have
also reasonably concluded that the question asked the applicant to report all Acash money@
held within the household--inclusive of that held on one=s
person, in bank accounts, and anywhere else and under this interpretation, her
income and assets would have included the money held in the CD account.  Moreover, Ms. Solano testified that the
question required applicants to report different sources of income and assets,
including cash in hand or bank accounts.

Appellant also
argues that she answered the question correctly because the money was deposited
in a CD account and therefore, belonged to GECU at the time she filled out the
applications.  However, the jury could
have reasonably concluded that the required reporting of money held in Abank accounts@
included certificate of deposit accounts. While Appellant testified that it was
her understanding that once the money was deposited in the CD account it no
longer belonged to her, Ms. Guerrero testified that the account holder
maintains access to the account and, in the event of early withdrawal, the bank
would merely impose the designated penalty. 
From this evidence, the jury could have determined that Appellant had
access to the money in the account at all times and after the 180-day period
could withdraw the principal balance.  

 








Viewing the
evidence in the light most favorable to the verdict, we conclude that the
evidence was legally sufficient to establish beyond a reasonable doubt the
element of knowingly making a false entry on a governmental record.  Moreover, after viewing all the evidence in a
neutral light, we conclude that the evidence supporting the verdict was not so
weak as to be manifestly unjust.  Even
though Appellant offered what she considers to be a reasonable explanation for
not reporting the $3,000, and despite the fact that Ms. Solano had no personal
recollection of her meeting with Appellant, the jury could have chosen to
believe Ms. Solano=s
testimony over Appellant=s.  The jury, as fact finder and judge of the
credibility of the witnesses, may believe all, some or none of the testimony
offered at trial.  Chambers v. State,
805 S.W.2d 459, 461 (Tex.Crim.App. 1991). 
Therefore, the evidence was both legally and factually sufficient to
establish beyond a reasonable doubt the element of knowingly making a false
entry on a governmental record.  Issues
Two, Five, and Six are overruled.  

Intent
to Defraud or Harm

In Issues Three
and Four, Appellant challenges the legal and factual sufficiency to support her
conviction, arguing that the State failed to present evidence on the element of
intent to defraud or harm.  In the jury
charge, Aintent to
defraud@ was
defined as Ato act
with the intent to cheat or deceive, ordinarily for the purpose of causing a
financial loss to someone else or bring about a financial gain to one=s self.@  AHarm@ was defined as Aanything
reasonably regarded as loss, disadvantage, or injury, including harm to another
person in whose welfare the person affected is interested.@ 
See Tex.Pen.Code Ann.
' 1.07(a)(25).








Appellant contends
the State presented no evidence on the element of intent to defraud or
harm.  The State can establish intent to
defraud or harm by circumstantial evidence. 
Burks v. State, 693 S.W.2d 932, 936-37 (Tex.Crim.App. 1985).  Here, the State presented evidence that
Appellant failed to report the money held in the CD account on her applications
for governmental assistance.  As a result
of her applications, Appellant received $5,555.30 in benefits from the
TDHS.  Based on her notes from Appellant=s interview, Ms. Solano explained that
she and Appellant discussed child support income.  Ms. Solano testified that she would never
have told anyone not to report back pay for child support on the application
form.  Mr. Brown testified that had
Appellant reported the CD account money, she would not have been eligible for
the governmental assistance she received. 
From this evidence, the jury could have reasonably inferred that
Appellant knew that reporting the CD account money would negatively affect her
eligibility for governmental assistance and, in addition, was never told by Ms.
Solano not to report it.  Therefore, the
jury could have reasonably concluded that Appellant made the decision not to
report the CD account money of her own accord and did so with the knowledge
that her deception would cause some financial loss to the TDHS.  Further, there was evidence that TDHS was
harmed due to its loss of $5,555.30. 
Viewing the evidence in the light most favorable to the verdict, we
conclude that the evidence was legally sufficient to establish beyond a
reasonable doubt the element of intent to defraud or harm.








After considering
all the evidence in a neutral light and giving appropriate deference to the
jury=s role as
sole judge of the weight and credibility of the witnesses= testimony, we conclude that the
evidence was not too weak to support the jury=s
finding beyond a reasonable doubt nor was the contrary proof so strong that
Appellant=s guilt
could not be proven beyond a reasonable doubt. 
See Zuniga, 144 S.W.3d at 484-85. 
Therefore, we conclude the evidence was legally and factually
sufficiency to establish the element of intent to defraud or harm beyond a
reasonable doubt.  Issues Three and Four
are overruled.

We affirm the
trial court=s
judgment.

 

 

July
15, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
The terms and conditions for the GECU Smart Step Variable Rate Certificate of
Deposit account were admitted into evidence at trial.  In relevant part, the contract provides:

 

Early Withdrawal and Penalty:

 

If Certificate Account principal is
withdrawn before any maturity date, a SUBSTANTIAL PENALTY IS IMPOSED as
follows:

 

There will be a forfeiture of 180 days
interest (whether earned or not) which will be calculated at the interest rate
in effect for this Certificate on the date of withdrawal.  Interest paid during the term of the
Certificate, but prior to maturity, will not be subject to early withdrawal
penalty.

 

To comply with these provisions, the principal balance will
be reduced by the amount of the penalty plus the amount withdrawn from the
account.  Interest will continue to
accrue on any balance left on deposit in the account.





[2]
A challenge to the trial court=s
ruling on a motion for a directed verdict is a challenge to the legal
sufficiency of the evidence that supports the judgment.  Williams v. State, 937 S.W.2d 479, 482
(Tex.Crim.App. 1996); Barron v. State, 43 S.W.3d 719, 722 (Tex.App.‑-El
Paso 2001, no pet.); Valdez v. State, 993 S.W.2d 346, 353 (Tex.App.‑-El
Paso 1999, pet. ref=d).  Therefore, we review Appellant=s points of error on the denial of her
motions for directed verdict under the traditional legal sufficiency standard.