# NO. 12-17-00089-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JERMICHAEL T. SMITH,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jermichael T. Smith appeals his conviction for forgery by possession with intent to utter. In three issues, Appellant contends the evidence is insufficient to support his conviction and the judgment imposes unconstitutional court costs. We affirm.

### BACKGROUND

On April 22, 2016, Appellant drove Jordan Downs to Lynch's Convenience Store (Lynch's). Downs attempted to cash a check inside the store. The cashier refused to cash the check because it looked similar to a check that a previous customer brought in and that was recently returned to the store as fraudulent. After confirming that Downs arrived in the same vehicle as the previous customer and that the driver of the vehicle was the same, the cashier called the police. When officers arrived, Downs was inside the store and Appellant was in the vehicle in the parking lot. During a search of Appellant's vehicle, officers found several checks in the vehicle. Following an investigation by a fraud detective, Appellant and Downs were arrested.

Appellant was charged by indictment with forgery by possession with intent to utter. He pleaded "not guilty" and the matter proceeded to a jury trial. The jury found Appellant "guilty."

After a hearing on punishment, the trial court sentenced Appellant to confinement of fourteen months in state jail. This appeal followed.

<h2 align="center">SUFFICIENCY OF THE EVIDENCE</h2>

In his first issue, Appellant contends the evidence is insufficient to support his conviction.[1] Specifically, he argues that the State failed to prove beyond a reasonable doubt that he assisted with Downs's attempt to pass a forged check. In his second issue, Appellant contends the trial court erred in denying his motion for directed verdict. Because a challenge to the trial court's ruling on a motion for directed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction, we address these issues together. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1991).

## Standard of Review and Applicable Law

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899.

When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined

---

[1] Appellant raises both a legal and factual sufficiency challenge. Under *Brooks*, however, we only apply the *Jackson v. Virginia* standard. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.).

A person commits the crime of forgery by possession with intent to utter if the person "forges" a writing with intent to defraud or harm another. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(C) (West Supp. 2017); *Burks v. State,* 693 S.W.2d 932, 936 (Tex. Crim. App. 1985). In "possession" cases, the term "forge" in section 32.21(a)(1)(C) means "to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B) of this subsection." TEX. PENAL CODE ANN. § 32.21(a)(1)(C). Therefore, "forge" in this context means to be in possession of a writing that has been altered, made, completed, executed, or authenticated so that it purports to be the act of another who did not authorize the act with intent to issue, transfer, register the transfer of, pass, publish or otherwise utter it. *Id*. § 32.21(a)(1)(A), (B). While evidence of a passing or attempted passing of a forged instrument would certainly aid the State in proving a case of possessing a forged instrument, such evidence is not absolutely essential. *Burks,* 693 S.W.2d at 936.

**Analysis**

Appellant contends the evidence is insufficient to establish all elements of forgery beyond a reasonable doubt. According to Appellant, the State's only evidence showed that he drove Downs to the store and that this evidence alone is insufficient to establish that he was a party to the forgery attempt. However, the jury charge did not authorize the jury to find Appellant guilty as a party. Thus, we must determine whether the evidence is legally sufficient to support Appellant's conviction as a primary actor.

At trial, Bart Lemons, a police officer for the City of Tyler, testified that he was on patrol on April 22, 2016, and responded to a call at Lynch's on a possible forgery in progress. When Lemons arrived, Officer Chad Hudson was already on location and was going to talk to the suspect inside the store. Hudson asked Lemons to contact the other suspect in the vehicle. Lemons identified a silver Nissan Altima driven by Appellant. He testified that he asked Appellant for identification and the men conversed until Hudson approached the vehicle and told Lemons that the man inside the store was trying to cash a forged check.

Appellant told the officers that he brought Downs to the store to cash a check. Officer Lemons asked Appellant if there were more checks in the vehicle. Appellant responded that he did not know, and Lemons told Appellant, "If there are, you probably want to get them out of

3

there." Appellant then started looking through the glove box and produced more checks. Six checks were eventually found in the vehicle. According to Lemons, the checks looked to be of similar paper and similar ink and were made out to different persons from different businesses, but all drawn from the same bank. Lemons did not recall if any of the checks were made payable to Appellant. Based on his experience, Lemons believed the checks looked like forgeries. Because Officer Hudson was reluctant to make an arrest at the time, the officers called their sergeant who sent a forgery detective to investigate. Following an investigation by Detective David Cook, Lemons arrested Appellant.

Brenda Woodcock, a cashier at Lynch's, also testified. She stated that, as part of her duties, she cashes payroll checks. She further testified that she was asked to cash a check on April 19, 2016, for "Mr. L.C." After she cashed the check, the man took his money and left. Later in the week, the store discovered that the check was fraudulent.

Sandra Jones, a cashier and manager at Lynch's, testified that L.C. Timms presented a check for cashing on April 20. Jones decided not to cash the check because it looked identical to a check that had been returned as fraudulent. She followed Timms out of the store and wrote down the license plate number, make, and model of the car in which he was a passenger. On April 22, Jones was working when a gentleman tried to cash a check that looked like the one she refused to cash on April 20. This time, the driver of the car also came into the store and she recognized him as the driver from April 20. She confirmed that the vehicle and license plate were the same and called the police. Jones identified the driver as Appellant. It was the April 22 check that served as the basis for the indictment against Appellant.

Tammie Lyle, a human resources employee at Sabre Industries, testified that a Tyler detective contacted Sabre about a check allegedly from the business, which was the April 22 check Downs tried to cash at Lynch's. She testified that she reviewed Sabre's records and Sabre did not issue the check. She further stated that the bank specified on the check is not a bank that Sabre uses and the signature on the check does not belong to anyone in the company.

Downs testified that he was arrested on April 22 for attempting to pass a forged check at Lynch's. He pleaded "guilty" and is on probation. Downs testified that Appellant asked him if he wanted to make some money. Downs said that he needed to pay his rent and did not have a job, so he agreed. According to Downs, Appellant said "We're going to get some checks made and we're going to cash them." Appellant drove Downs and some other men to Fort Worth to

4

have the checks made. Downs testified that he does not know who made the checks but he watched the checks being made. After the checks were printed, Appellant drove the men back to Tyler. Appellant kept the checks and dropped Downs off at his apartment. The next morning, Timms cashed his check without apparent incident and Appellant asked Downs if he was ready to cash a check the next day. When, Appellant picked Downs up at his apartment, he gave Downs a check. Appellant drove Downs to Lynch's, and told him to "go in there and act like you're fixing to cash a check and get the money, come back." Downs went into the store and attempted to cash the check. The cashier refused, the police were called, and Downs was arrested. Downs was not certain whether Appellant was to get a percentage from the cashed check because the men never discussed it.

Downs also admitted to signing a previous statement that was inconsistent with his trial testimony. In the statement, he said that Appellant knew nothing about what he was doing at the store. Downs testified at trial that he decided it was better to tell the truth and that he signed the statement in an attempt to avoid getting into trouble.

Cook, a fraud detective with the Tyler Police Department, testified that it is a common scheme for a driver to find people who will cash checks for him. According to Detective Cook, more often than not, the driver does not actually cash a check, but will get a percentage of the proceeds. He explained that the driver is in control of what happens and when. Cook testified that he responded to a call at Lynch's on April 22. When he arrived, Officers Hudson and Lemons were on scene talking to the suspects. Cook testified that he spoke with everyone at Lynch's, and received several checks during the investigation. The checks appeared to be made with VersaCheck, a software program for printing checks. The signature on all of the checks was that of Clive Barker, noted author and movie producer, whose signature is readily available on the internet. Cook testified that he had seen Barker's signature on forged checks in prior investigations. Upon comparing the checks, Cook noticed that they were from a continuous series of check numbers, which he believed was strange for checks issued from different companies at different times to different people. Cook testified that none of the checks collected were legitimate.

Accordingly, the jury heard evidence that Lemons and Cook both believed the checks found in Appellant's vehicle and attempted to be cashed by Downs on April 22 to be forgeries. The jury also heard Jones testify that Appellant was the driver of the vehicle that was present on

5

both April 20 and April 22 when the forged checks were brought in. Downs testified Appellant approached him with the offer of making money by having checks made and cashing them, Downs saw the checks being made, and Appellant contacted Downs when it was time to cash the check, drove Downs to Lynch's, and instructed Downs on what to do. Downs's testimony is consistent with Detective Cook's testimony regarding the common scheme where a driver finds individuals to cash checks, never cashes a check himself, obtains a percentage of the proceeds, and controls the scheme. As sole judge of the weight and credibility of the testimony, the jury was entitled to believe Downs's trial testimony over his inconsistent statement. *See **Brooks***, 323 S.W.3d at 899.

Based on the evidence presented at trial, the jury could reasonably determine that Appellant (1) recruited Downs to pass forged checks, drove to Fort Worth to have the checks printed, gave Downs a forged check to cash, and asked Downs to cash the check at Lynch's; (2) intended to profit from the forged checks; and (3) planned on cashing the other forged checks found in his vehicle. In doing so, the jury could reasonably conclude that Appellant possessed a check that had been altered, made, completed, executed, or authenticated so that it purports to be the act of another who did not authorize the act with intent to utter it and, thereby, possessed a forged check with the intent to defraud or harm another and pass the check as legitimate. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A)-(C). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found all essential elements of forgery by possession with intent to utter beyond a reasonable doubt. *See **id.***; *see also **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; ***Brooks***, 323 S.W.3d at 912. Because there is sufficient evidence to support the jury's verdict, we overrule Appellant's first and second issues.

<u>**COURT COSTS**</u>

In his third issue, Appellant argues that this Court should modify the trial court's judgment to remove unconstitutional court costs.

**<u>Applicable Law</u>**

The imposition of court costs upon a criminal defendant is a "nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." ***Johnson v. State***, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). The consolidated fee statute requires a defendant to pay a court cost of $133 on conviction of a felony. TEX. LOC. GOV'T CODE ANN.

§ 133.102(a)(1) (West Supp. 2017). The money received is divided among a variety of state government accounts according to percentages dictated by the statute. *See id.* § 133.102(e) (West Supp. 2016); *Salinas v. State***,** 523 S.W.3d 103, 105 (Tex. Crim. App. 2017). The court of criminal appeals has held the statute unconstitutional with respect to two of these accounts: an account for "abused children's counseling" and an account for "comprehensive rehabilitation." *See Salinas*, 523 S.W.3d at 105. As a result, the court held that any fee assessed pursuant to the statute must be reduced pro rata to eliminate the percentage of the fee associated with these accounts. *Id.* The court further held that its holding applies only to (1) a defendant who raised the appropriate claim in a petition for discretionary review before the date of the court's opinion, if the petition is still pending on that date and the claim would otherwise be properly before the court on discretionary review, or (2) a defendant whose trial ends after the mandate in *Salinas* issues. *Id.* at 113.

## Analysis

Here, the final judgment shows a court cost assessment of $329. The bill of costs shows that the $133 consolidated court cost fee was assessed. However, because (1) no petition for discretionary review is pending on Appellant's claim, and (2) the proceedings in the trial court ended on March 3, 2017—prior to the court of criminal appeals's mandate in *Salinas*—the court's holding in that case does not apply.[2] *See id.*; *see also Salinas v. State*, No. PD–0170–16 (Tex. Crim. App. June 30, 2017) (mandate). Accordingly, we overrule Appellant's third issue.

**DISPOSITION**

Having overruled Appellant's first, second, and third issues, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered January 10, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

---

[2] Appellant argues that we should apply *Salinas* retroactively to his case because a failure to do so violates due process and results in an unconstitutional taking; however, we are required to comply with instructions set out in the court of criminal appeals's opinions because they are binding authority on this Court. *See Purchase v. State*, 84 S.W.3d 696, 701 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Fielder v. State*, No. 12-11-00090-CR, 2012 WL 951916, at *2 (Tex. App.—Tyler March 14, 2012, pet. ref'd) (mem. op., not designated for publication); *see also* TEX. CONST. art. V, § 5(a) (declaring that court of criminal appeals is final authority for criminal law in Texas).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 10, 2018**

**NO. 12-17-00089-CR**

**JERMICHAEL T. SMITH,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 007-0824-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*